**HI–G, INCORPORATED, Plaintiff, Appellant,**

v.

**ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Defendant, Appellee.**

No. 7016.

United States Court of Appeals
First Circuit.

March 27, 1968.

Robert F. Sylvia, Boston, Mass., with whom Fine & Ambrogne, Boston, Mass., was on brief, for appellant.

Lionel H. Perlo, Boston, Mass., with whom Jacob J. Locke, and Ficksman & Conley, Boston, Mass., were on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

PER CURIAM.

This diversity action to recover on an insurance policy covering "direct physical loss * * * or damage * * * from any external cause" should, concededly, result in a finding for the insured unless barred by the policy's exclusion clause.

---

The presently material portion of that clause is as follows:

> "Loss or damage caused by or resulting from dampness of atmosphere, dryness of atmosphere, extremes or changes of temperature, shrinkage, evaporation, loss of weight, rust, contamination, change in flavor or color or texture or finish, unless such loss or damage is caused directly by fire, lightening, windstorm, hail, explosion, riot or civil commotion, aircraft, vehicles other than transporting conveyances, bursting of pipes or apparatus, vandalism, malicious mischief, theft, attempted theft or casualty occurring to a vessel or other vehicle used in transporting the property."

The goods in question, a number of small electro-mechanical relays, were being subjected to heat and a vacuum inside an oven in preparation for the introduction of a preservative gas when, because of a mishap, oil vapor entered the oven. As a result the internal and external surfaces of the relays became coated with an oil film which proved to be nonremovable, destroying their usefulness. The district court, sitting without jury, found that the goods had been "contaminated" by the oil within the meaning of the exclusion clause, and entered judgment for the defendant. Plaintiff appeals.*

Plaintiff asserts that a common meaning of the verb "contaminate" is to introduce a foreign substance effecting a deleterious change in the product. This is true enough. It concedes, however, as it must, that a product is commonly spoken of as contaminated when the foreign substance merely injures its usefulness without affecting the original physical characteristics. Milk rendered unfit by the introduction of bacteria is contaminated, but so is it by the commingling of an inactive substance which makes it unacceptable to the eye

or tongue. We agree with the district court, 283 F.Supp. 211 that "while the introduction of an * * * [undesirable] element may change the product itself, it is not essential to contamination that it do so." Indeed, no dictionary we have found suggests otherwise.

■ Plaintiff does not so much deny this as reply that if a word has two common meanings it is ambiguous, and hence the policy is to be construed against the company. This proves too much. Applied literally, the company would always lose, for the insured could always insist upon whatever was the nonapplicable meaning in the particular case. Rather, the rule must be that if both meanings are commonly understood and equally familiar, both must apply unless there is some reason for selecting only one.

■ Under the reach of this clause, unless the originating external cause was fire, lightning, windstorm, vandalism, theft or other listed cause, the policy excluded among others, all losses due to dampness, dryness of atmosphere, change of temperature, shrinkage, loss of weight, rust and contamination. We cannot see how anyone could reasonably think that whether the contaminant entered into a chemical reaction with the spoiled goods was in any way significant. Cf. American Cas. Co. of Reading, Pa. v. Myrick, 5 Cir., 1962, 304 F.2d 179, 96 A.L.R.2d 1352. Even apart from the broad context of this clause, common usage does not imply separate meanings divided by this factor.

The district court may also have been correct in relying on another exclusion provision in the policy, concerning property "being actually worked upon," but we find it unnecessary to reach that question.

Affirmed.

---

* Whether Connecticut or Minnesota law applies is unclear, but the parties agree that both states read insurance contracts in the usual way.