FAITH LUTHERAN RETIREMENT HOME, a Corporation, Plaintiff and Respondent, *v.* M. E. VEIS, Administrator of the Estate of John E. Thorson, Deceased, Defendant and Appellant.

No. 11794.
Decided Aug. 18, 1970.
473 P.2d 503.

Mr. Chief Justice James T. Harrison, did not participate.
Francis Gallagher, argued, Glasgow, for appellant.
Baxter Larson, argued, Wolf Point, for respondent.

MR. JUSTICE DALY delivered the Opinion of the Court.

This action was commenced in the district court of the fifteenth judicial district, county of Daniels, by the Faith Lutheran Retirement Home, a Montana corporation, located in Wolf Point, Montana, hereinafter referred to as "the Home", against the administrator of the estate of John E. Thorson, deceased, hereinafter referred to as "defendant". The action was to recover on a creditor's claim filed in the defendant estate for $10,000 and rejected by the administrator.

John E. Thorson entered the Home on June 4, 1965. He was 81 years of age, a retired farmer, unmarried, and had no children. He had been acquainted with the administrator and chaplain of the Home, Rev Thomas Boe, since 1960. He had contributed to the Home since that time in amounts considered liberal by Rev. Boe. After his admission on June 4, Rev. Boe invited John Thorson into his office on June 7 to complete the formal application and articles of agreement for admission to the Home. The application consists of four pages. In addition to the normal data and payment agreements for board, room, and services, John Thorson dictated and had inserted as paragraph 16, page 2 of the agreement the following:

"16. Room Sponsorship Plan:

"I made most of my money in Montana. The Church through Faith Lutheran Home has been doing a wonderful piece of work among my old friends. For the comfort, care, happiness I have

while I am here be it short or long I wish to pay for these values the sum of $10,000.00 on demand. This may however be collectable against my estate if not demanded sooner, or paid by me.''

It was established that the method used by John Thorson resulted from his unkind feeling toward lawyers.

This application was signed by John Thorson and witnessed by Mary L. Buck, a registered nurse at the Home and by Rev. Boe. The acceptance of the application was signed by C. H. Brocksmith, president of the Home, and Herbert Houg, its secretary. The original was filed at the Home.

John Thorson left the Home on June 21, 1965 and died in the state of Minnesota on May 16, 1966.

The creditor's claim filed and rejected and the action against the defendant was based on the clause inserted in the application, ·heretofore quoted.

Defendant answered alleging the agreement was invalid for want and failure of consideration. Defendant took Rev. Boe's deposition as an adverse witness, introduced the application as defendant's Exhibit No. 1, and moved the court for summary judgment pursuant to Rule 56, M.R.Civ.P., based on the allegation that the record showed no genuine issue as to material fact, The Home filed a cross-motion for summary judgment under Rule 56(a) and (c), M.R.Civ.P. and urged the court that a gift was made by John Thorson.

The court on September 8, 1969, granted the motion of the Home for summary judgment and set forth the following:

''The facts are that under date June 7, 1965, the decedent, John F. Thorson, made a gift in writing in the amount of Ten Thousand Dollars ($10,000.00) to the Plaintiff, for which lawful claim has been made; that Plaintiff is entitled to have said claim allowed against decedent's estate.

''On the pleadings, desposition, and papers on file in the above entitled action, it is established that there is no genuine

issue as to any material fact, and Plaintiff's claim against Defedant is valid, and Plaintiff is entitled to judgment as a matter of law in accordance with the prayer of its complaint.''

Judgment was entered accordingly and defendant appeals on the following statement of issues.

1. The court erred in holding that the decedent, John E. Thorson, had, during his lifetime, made a gift in writing in the amount of $10,000 to the plaintiff.

2. The court erred in granting plaintiff's motion for summary judgment

3. The court erred in not granting defendant's motion for summary judgment.

The controlling issue is issue No. 1 and defendant cites Sylvian v. Page, 84 Mont. 424, 439, 440, 276 P. 16, 20, as concerns gifts:

''The essential elements are therefore: *the delivery, the accompanying intent,* and *acceptance by the donee.* Such a gift is made without condition, and becomes at once irrevocable.'' (Emphasis supplied.)

Defendant contends that all of the essential elements as set out in *Sylvian* are lacking in the present case.

Mr. Chief Justice Callaway in *Sylvian,* discussing gifts of personal and real property, said:

''For the reasons foregoing it must be held that the bill of sale was delivered at its date also. A transfer in writing is called a grant, or conveyance, or bill of sale. The term 'grant' includes all these instruments unless it is specially applied to real property (Section 6842, Rev.Codes 1921) [now section 67-1508, R.C.M.1947].''

He further observed in the same case:

''Under identical statutes the supreme court of California has held 'that as between the donor and donee it is not necessary to the validity of a gift *inter vivos,* if made by a written instrument transferring the title to the donee, that the possession of the thing given be passed to the donee.' (Citing cases) While a verbal gift is not valid unless there is actual or symbolical de-

livery to the donee of the thing given (section 6883, Rev. Codes 1921) [now section 67-1707, R.C.M.1947] *this rule has no application when the gift is effected by an instrument in writing.*" (Emphasis supplied.)

It would appear from *Sylvian* that the matter of delivery is not at issue as the instant case involves an instrument in writing. Yet, defendant urges *Sylvian* limits this rule to *formal* instruments as opposed to *informal* writings. Defendant further cites In re Brown's Estate, 122 Mont. 451, 457, 206 P.2d 816, 820, in support:

"Where actual manual delivery of the property is possible, delivery should be so made and when the transaction is directly between the donor and the donee, delivery should be as complete as the circumstances will permit. (Citing cases.)

" 'Generally a donor must go as far as the nature of the property and the circumstances reasonably permit in parting with dominion and making the gift irrevocable. (Citing cases.)'
* * *

"Dominion over the article given should be parted with and the gift must pass beyond the recall and power of revocation of the donor. And complete control should be vested in the donee. (Citing cases.)"

At page 459, 206 P.2d at page 821 of In re Brown's Estate, this Court said:

"There must be more than an intention on the part of the donor to personally give; it is necessary also, that there be an actual delivery to the donee, and the delivery must divest the donor of present dominion and control over the property absolutely and irrevocably and confer upon the donee the dominion and control. A gift will not be presumed, but one who asserts title by this means must prove it by clear, convincing, strong and satisfactory evidence. (Citing cases)"

Defendant fails to take into account that *In re Brown's Estate* is a discussion concerned with the gift aspect of United States bonds registered in the name of the deceased as co or joint

owner with her children, the delivery of the saame, and the *tax liability* to the state of Montana. Bonds and other securities are generally subjected to more stringent rules of law in gift cases and especially if the application of the law has to do with *taxes.*

This Court at p. 458, 206 P.2d at p. 820 in In re Brown's Estate made this clear:

"This court has said that the burden of establishing the fact of a gift is on the person claiming the gift (Citing case) *This is particularly true when the fact of alleged gift becomes a tax question.*

"A tax controversy does not arise until after the death of the donor. The transfer then is substantially testamentary. The only question in such litigation is whether or not the gift took place during donor's lifetime or at donor's death. *The ultimate disposition of the property is not involved. In such cases a strict enforcement of the rules of delivery is necessary to protect public interest."* (Emphasis supplied.)

This Court said at p. 454, 206 P.2d at p. 818 of In re Brown's Estate, when commenting on the case of State Board of Equalization v. Cole, 122 Mont. 9, 195 P.2d 989, wherein bonds were purchased in co-ownership:

"We did indicate, however, that if there had been an actual delivery of the bonds after such registration, a completed gift would have been made."

We cannot agree that *Sylvian* or *In re Brown's Estate* establishes defendant's position regarding formal instruments. Defendant relies further on 63 A.L.R. 537 and 48 A.LR.2d 1406, alleging that these discussions deal for the most part with formal writing. 48 A.L.R.2d 1406 is a supplement to 63 A.L.R. 537. We do not find this much imbalance in the treatment of the problem. We do agree with the finding there that a number of cases, including *Sylvian* which was selected for detailed analysis by 63 A.L.R., could be more direct in assessing informal writings and that a good deal of confusion exists because in some juris-

dictions it cannot be determined if the gift was denied because of the writing or on other grounds. Yet, an adequate treatment of the subject was developed and the approving jurisdictions given, including New York. 63 A.L.R. concludes at page 560 with this observation about informal writings: that they only serve the same purpose as delivery in an oral gift; namely to preclude unfounded claims and authenticate the gift, and in relation to the three legal theories discussed in support it was stated that these instruments operate to transfer title. There is no other theory necessary. 48 A.L.R.2d supplementing this is very similar in its analysis and states at p. 1414 as follows:

"Even in N.Y., however, the courts require clear evidence of a presently operating donative intent before giving effect to an informal instrument relied upon as a substitute for the delivery otherwise held essential to a gift of chattels or securities."

With this we agree.

This takes us now to the matter of donative intent. Defendant contends that the words "I wish to pay" as used in paragraph 16 of the application demonstrates that Mr. Thorson had no present intent to make a gift to the Home.

The California Supreme Court in Berl v. Rosenberg, 169 Cal.App.2d 125, 336 P.2d 975, 980, stated:

"The word 'wish' can undoubtedly be interpreted to express a desire that something will happen in the future. But that is not its only interpretation. It can also be interpreted as intending a present transfer, synonymous with the words 'I hereby grant,' words that a lawyer would probably have used. *How the words should be interpreted depends upon the language in the instrument itself and the circumstances surrounding the drawing of the instrument.*" (Emphasis supplied.)

Here, the circumstances surrounding the drawing of the instrument are that Mr. Thorson did not believe in lawyers and he was accustomed to giving money to support the Home. He directed the Rev. Boe to type the instrument in his own words which were *"I wish to pay"*.

Section 93-401-17, R.C.M.1947, provides:

"For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the judge be placed in the position of those whose language he is to interpret."

Here, the circumstances under which the instrument was prepared are set out in the testimony of the Rev. Thomas Boe, taken by deposition:

"Q. Well, putting it this way: Maybe you could explain to us how it came about that paragraph sixteen as printed in Defendant's Exhibit Number One was deleted and the room sponsorship plan reference made in lieu thereof. How did that come about?

"A. Well, in our conversaation I suppose this is the way it opened, I learned that John was testate, and that is just routine for us, and we immediately say, 'Well, why don't you do something about it?'" and at that time I learned that *John had or didn't have too kind of thoughts for lawyers,* and he even mentioned this thing here, saying that was something that was gotten together by a bunch of lawyers.

"Q. Now you are referring to the room sponsorship plan?

"A. Yes, and I asked him, Well, what do you think of this?" just as a leading question, and I said 'John, in order to do this thing correctly, *you just ought to forget those differences and set up your Will,* and include it there, and then no one will be on the "spot". *Well, he wouldn't go along on that.* And then this thing was just sort of bypassed. *I then talked to him about a note. No, he said for me to put in what he wanted right here,* altogether with the rest of it, and he said if the Preacher, and the Doctor and the Nurse, if they don't think I know what I am doing, then it doesn't make any difference what I do. That is the way he felt. And that is why that was written and so I just asked him, *'Well, what shall I write'* and so *he said that he wanted to give a gift.* I put this Room Sponsorship Plan, and

as a matter of fact he looked at that twice, you know, and I now half wish that I hadn't, because he just wanted this the way it was, and I scratched this out and he gave me instructions as to what he wanted me to put down there." (Emphasis supplied.)

It must be remembered that the only testimony taken was Rev. Boe's deposition and it stands alone, uncontradicted. There has been no challenge that it is not credible. Following the fundamental rule that the trial court may not disregard uncontradicted credible evidence, we must accept the circumstances related by Rev. Boe. His testimony establishes that John Thorson rejected lawyers, a will, or a note and he stated directly that he "wanted to give a gift" and did so in the manner related.

Defendant argues further that the Home did not accept the gift and made no demand on John Thorson during his lifetime. Section 67-1511, R.C.M.1947, provides:

"A grant cannot be delivered to the grantee conditionally. Delivery to him, or to his agent as such, is necessarily absolute, and the instrument takes effect thereupon, discharged of any condition on which the delivery is made."

In addition to the statute, the written instrument was accepted by the Home and filed there until the demand was made. This satisfies Montana law as it concerns acceptance of gifts by written instrument.

On Issue No. 2, we agree generally with defendant's argument about the mechanics of motions for summary judgment but feel the circumstances of this case do not square with McNabb v. Fisher, 38 Ariz. 288, 299 P. 679, cited by defendant, in as much as fraud was never an issue in this case.

Rule 56(c), M.R.Civ.P. provides in part that the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file show there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.

Here, the defendant filed a motion for summary judgment. The Home also filed a motion for summary judgment. In 3 Barron & Holtzoff, § 1239, pp. 176-178, it is stated that the fact both parties have moved for summary judgment does not establish that there is no issue of fact. A party may concede that there is no issue if his legal theory is accepted and yet maintain there is a genuine dispute as to material facts, if his opponent's theory is adopted.

Defendant contends the Home's motion for summary judgment left certain factual questions unanswered. However, it was not until this appeal that certain questions, such as the senility of Mr. Thorson, were raised by the defendant. This Court has stated that a trial court, in considering a motion for summary judgment, has no duty to anticipate possible proof that might be offered under the pleadings. Asking for such foresight demands clairvoyance not possessed even by a trial judge. Silloway v. Jorgenson, 146 Mont. 307, 406 P.2d 167; Naegeli v. Daniels, 145 Mont. 323, 400 P.2d 896.

Upon considering defendant's Exhibit No. 1, the deposition of the Rev. Boe, and the briefs filed in support of and in opposition to the motions for summaary judgment, the trial court concluded that there was a valid gift, there was no genuine issue of fact, and plaintiff Home was entitled to judgment as a matter of law.

We find no evidence, law, or material fact, properly presented, to disturb the findings of the trial court.

Judgment of the trial court is affirmed.

MR. JUSTICES CASTLES, JOHN C. HARRISON and HASWELL concur.

MR. CHIEF JUSTICE JAMES T. HARRISON deemed himself disqualified and therefore did not participate in this Opinion.