No. 83-161

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

MERTON G. MALEK, and ROBERT L. PATTEN,

Plaintiffs and Appellants,

-vs-

DONALD PATTEN, and FIRST NATIONAL
BANK OF GREAT FALLS,

Defendant and Respondents.

---

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Joel G. Roth, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Alexander & Baucus; Nancy S. Peterson argued
for Robert Patten, Great Falls,
Edward Alexander argued in rebuttal for Robert
Patten, Great Falls, Montana

For Respondents:

Jardine, Stephenson, Blewett & Weaver; James E.
Aiken argued for First National Bank-Great Falls,
Great Falls, Montana
Church, Harris, Johnson & Williams; R. Keith Strong
argued for Donald Patten, Great Falls, Montana

---

Submitted: November 17, 1983

Decided: February 27, 1984

Filed: FEB 2   1984

*Ethel M. Harrison*

---

Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Plaintiffs appeal from the judgment of the Eighth Judicial District Court, Cascade County, which found defendant Donald W. Patten was entitled as joint tenant to three certificates of deposit and joint checking account funds. We affirm the judgment of the District Court.

The issue on appeal is whether Ella D. Patten created valid joint tenancies in a joint checking account and certificates of deposit payable to "Ella D. Patten or Donald W. Patten."

On December 13, 1965, Ella D. Patten (Ella) purchased with her own funds Certificate of Deposit No. 3379 from defendant First National Bank of Great Falls (First National) in the amount of $10,000. The certificate was issued in the name of "Ella D. Patten or Donald W. Patten . . . payable to said depositor, or, if more than one, to either or any of said depositors or the survivor or survivors . . .." The signature card executed at the time of purchase was signed only by Ella. In place of the other joint tenant's signature appeared notations stating "refused to obtain other signature" and "make sure of identification."

On December 3, 1969, Ella purchased with her own funds two additional certificates of deposit, Certificate No. 12682 and Certificate No. 12683, each in the amount of $10,000. These certificates were also issued payable to "Ella D. Patten or Donald W. Patten" or the survivor. The signature cards were signed only by Ella.

From the date of purchase of these three certificates, until her death, Ella received all interest payable on the certificates. None of the certificates was physically delivered to Donald during Ella's lifetime and until after Ella's death, Donald had not seen the certificates. However, the certificates were delivered by Ella to a safe deposit box at Northwestern National Bank of Great Falls. Donald was a

2

joint tenant in the box and his signature appears on the signature card. Prior to Ella's death, only Ella had entered the safe deposit box, although Ella had told Donald to enter the box if something should happen to her. The certificates were located in the box at the time of Ella's death.

On July 10, 1970, Ella opened checking account No. 5002-50152-1 at First National. The account was designated a joint tenancy account with right of survivorship. The account was in the name of "Patten, Ella D. or Donald W." The joint account signature card was signed only by Ella. This account was still in existence at the time of Ella's death, with a balance of $46,587.16. Only Ella had transacted business on the account prior to her death.

Ella died on September 13, 1973. Soon thereafter, Donald went to Northwestern Bank of Great Falls and was granted access to the safe deposit box as one of the two named joint tenants, even though he had no key to the box. Donald removed the three certificates of deposit and later presented them for payment to Washington Federal Savings and Loan Association in Seattle, Washington. Washington Federal forwarded the certificates to First National for payment. First National remitted the proceeds plus accrued interest to Washington Federal for credit to the account of Donald W. Patten. On Donald's signature, the checking account funds were also withdrawn from First National and received by Donald.

After two successful challenges to Ella's wills by plaintiff Robert Patten, the District Court found Ella intestate and appointed a personal representative, plaintiff Merton Malek. See Patten v. Patten (1976), 171 Mont. 399, 558 P.2d 659; Estate of Patten (1978), 179 Mont. 299, 587 P.2d 1307. Plaintiffs now seek to recover $76,587.16, consisting of $30,000 from the three certificates and $46,587.16 from the joint checking account. The District

3

Court found that the certificates and checking account were owned by Donald and Ella as joint tenants with right of survivorship and that all funds were properly paid to Donald as survivor. Judgment was entered for defendants and plaintiffs appeal.

Appellants argue that Ella did not establish valid joint tenancies in the certificates or checking account. They argue that the absence of Donald's signature on signature cards for the certificates and checking account and his lack of specific knowledge relating to the account and certificates precluded establishment of valid joint tenancies by contract or gift. We disagree.

In State Board of Equalization v. Cole (1948), 122 Mont. 9, 195 P.2d 989, and Casagranda v. Donohue (1978), 178 Mont. 479, 585 P.2d 1286, this Court applied a gift analysis to resolve disputes concerning ownership of similar assets. In both cases, we applied the rule that a written agreement controls the issue of intent to make a gift:

> "In this jurisdiction the signing of a signature card containing an agreement that the deposit was payable to either of the co-depositors or the survivor settled the question of the donative intent of the donor to make a gift in joint tenancy." Cole, 122 Mont. at 15, 195 P.2d at 992, citing In re Sullivan's Estate (1941), 112 Mont. 519, 118 P.2d 383 (emphasis added).

> "Cole stood for the proposition that, in Montana, signing a signature card containing an agreement that the deposit is payable to either of the co-depositors or the survivor settles the question of donative intent to make a joint tenancy. Appellant cites an Arizona decision . . . wherein it was held that the mere form of a bank account is not regarded as sufficient to establish the intent of the depositor to give another a joint interest in or ownership of it. We find the Montana rule represents a more reliable manner for determining questions concerning the ownership of joint bank accounts. This should not be mistakenly understood to mean we have no concern for the depositor's intentions. Intention is clearly expressed on the face of the signature card. Additional evidence is unnecessary." Casagranda, 178 Mont. at 483-84, 585 P.2d at 1288 (emphasis added).

In Anderson v. Baker (1982), 196 Mont. 494, 641 P.2d 1035, we held that where a depositor during her lifetime

4

raised the issue of ownership of funds in a joint account, the statements on the signature card were not conclusive and evidence of intent to terminate the joint tenancy was admissible. The factual basis of the holding in Anderson was the depositor's written demand for the return of passbooks and certificates and a subsequent lawsuit filed by the depositor. 196 Mont. at 497, 641 P.2d at 1036. This case presents no similar facts. Ella did nothing during her lifetime to demonstrate an intent to terminate the joint tenancies.

In this regard, appellants place great emphasis on the fact that Donald did not sign the signature cards and that he had no specific knowledge of the accounts. They reason that Ella's failure to obtain Donald's signature or tell him of the accounts demonstrates a lack of intent on her part to make a gift. However, this approach places greater emphasis on an omission than upon an unequivocal act clearly expressing her intent. These facts are insufficient to show an intent not to give Donald a joint interest in the certificates and account. These facts are also insufficient to show an intent to terminate existing joint tenancies as in Anderson.

We hold that absent evidence of intent to the contrary, the joint account agreements and signature cards signed by Ella Patten establish her intent to make a gift.

Appellants further attempt to distinguish Cole and Casagranda with respect to the gift delivery requirement. They contend that because Ella refused to obtain Donald's signature or inform him regarding the account and certificates, she failed to relinquish control over them. However, the delivery requirement is met if the donor creates in the donee a co-equal right to exercise control over the deposits. Cole, 122 Mont. at 16, 195 P.2d at 993. Ella deposited the money under agreement that Donald had a right

5

to withdraw the money or cash the certificates. In Cole, we stated that it is irrelevant that the right might prove to be of no pecuniary value. "'No act of [the donor] could defeat the right, although she might render it of no value.'" 122 Mont. at 16, 195 P.2d at 993, quoting Burns v. Nolette (1929), 83 N.H. 489, 144 A. 848 (emphasis added). Donald had a right to exercise control over the account and certificates, even though Ella may have rendered it valueless by failing to inform Donald of the details.

Most authorities take the position that the opening of a joint account with an agreement such as the one signed by Ella Patten is sufficient to satisfy the delivery requirement, so long as done with the requisite intent. Brown on Personal Property 183 (3d ed. 1975). We recognized that a formal or informal written agreement is sufficient to accomplish delivery, in Faith Lutheran Retirement Home v. Veis (1970), 156 Mont. 38, 473 P.2d 503. There, a valid gift was found where the donor executed an instrument saying he wished to give a certain sum of money to the donee and that it could be collected from his estate if not demanded sooner or paid. 156 Mont. at 39-40, 473 P.2d at 504. We reasoned that writings serve the same purpose as actual delivery in an oral gift: preclusion of unfounded claims and authentication of the gift. 156 Mont. at 44, 473 P.2d at 506.

Ella Patten's intent was clearly expressed on the face of the deposit agreements. These agreements are sufficient to accomplish her purpose. Moreover, signature cards are protective devices employed by banks to assure that the person transacting business with the account is actually the person named in the deposit agreement. So long as Donald was designated a joint tenant in the deposit agreement, lack of his signature on the card does not affect his rights as set forth in the deposit agreement.

6

Appellants have presented no authority for the proposition that a donee must sign the document which creates a gift or must know the details of the gift. The general rule is that acceptance of a gift is presumed. See Stagg v. Stagg (1931), 90 Mont. 180, 188, 300 P. 539, 543; 38 Am.Jur. 2d Gifts sections 34 and 35. Donald did nothing to repudiate the gifts. We find no legal significance in the absence of Donald's signature on the signature cards or lack of specific knowledge concerning the account and certificates.

Stringent application of gift theory elements as urged by appellants ignores the reality of modern practice relating to joint and survivorship bank accounts. Modern commercial practice relies heavily upon contractual theory rather than gift theory. The Legislature has recognized the validity of joint bank accounts and certificates of deposit based upon contractual principles. See section 72-1-110, MCA and comment; section 32-1-442, MCA. The Legislature has recognized the validity of the contractual relationship involved in these transactions by relieving banks of liability for paying the proceeds of such accounts according to the terms of the contract:

> "Joint deposits - survivorship. (1) When a deposit has been made or shall hereafter be made in any bank transacting business in this state in the names of two or more persons, payable to either or payable to either or the survivor, or any survivor, such deposit, or any part thereof, or any interest or dividend thereon, may be paid to any of said persons, whether the other or others be living or not. The receipt or acquittance of the person so paid shall be a valid and sufficient release or discharge to the bank for any payment so made.
>
> "(2) The term 'deposit' shall include certificates of deposit heretofore or hereafter issued." Section 32-1-442, MCA.

While this statute does not expressly vest title to account proceeds, it approves payment to the surviving joint tenant. This is precisely the position of First National in this case, which has delivered funds to Donald in accordance with the contracts.

A case emphasizing this contract relationship is Estate of Fanning (Ind. 1975), 333 N.E.2d 80. The depositor, with her own funds, purchased certificates of deposit as joint tenant with another person who signed nothing and knew nothing of the certificates' existence until they were found in a safe deposit box after the depositor's death. The Indiana Court applied the Restatement of Contracts provision:

> "'(1) Where performance of a promise in a contract will benefit a person other than a promissee, that person is . . .
>
> "'(a) A donee-beneficiary, if it appears from the terms of the promise in view of the accompanying circumstances that <u>the purpose of the promise . . . is to make a gift to the beneficiary or to confer upon him a right against the promisor to some performance</u> neither due nor supposed nor asserted to be due from the promisee to the beneficiary . . ..'" Estate of Fanning, 333 N.E.2d at 83, quoting Restatement of Contracts section 133 (1932) (emphasis added).

The Indiana Court expressly found that the donee's lack of knowledge of the certificates did not affect the validity of the gift. 333 N.E.2d at 83-84.

The Court concluded that:

> "We have adopted the contract theory instead of the gift theory . . .. <u>The elemental requirements of the gift theory tend to frustrate the intent of the donor. Some of the requirements - in particular the delivery requirement - defy the usual donor's inclination.</u> Other jurisdictions have adopted the contract theory. We are impressed with and persuaded by the apparent success of the contract theory in these jurisdictions." 333 N.E.2d at 85-86 (footnotes omitted) (emphasis added).

We note that the Legislature has essentially adopted the contract theory. We approve the contract theory as described in Estate of Fanning. This theory provides an additional basis upon which to affirm the District Court's judgment in this case.

Further, the certificates of deposit were kept in a safe deposit box in the name of Ella or Donald Patten. Donald had signed the signature card for the safe deposit box. Section 70-1-308, MCA provides:

> "Safe deposit box - joint tenancy. <u>When</u> <u>so</u>
> <u>specified</u> <u>in</u> <u>the</u> <u>agreement</u> granting for a term of
> time the right in two or more persons to use or
> occupy any safe or box, commonly referred to as a
> safe deposit vault or box for the safekeeping of
> valuables, such interest and estate created in the
> grantees <u>shall</u> <u>be</u> <u>a</u> <u>joint</u> <u>tenancy</u> in such vault or
> box <u>and</u> <u>pass</u> <u>to</u> <u>the</u> <u>survivors</u> <u>and</u> <u>survivor</u> upon the
> death of one or more of the joint tenants with
> <u>right</u> <u>in</u> <u>such</u> <u>survivors</u> and survivor <u>to</u> <u>have</u> <u>access</u>
> <u>to</u> <u>and</u> <u>possession</u> <u>of</u> such <u>vault</u> <u>or</u> <u>box</u> <u>and</u> <u>the</u>
> <u>contents</u> <u>thereof</u> <u>under</u> <u>the</u> <u>terms</u> <u>of</u> <u>the</u> <u>agreement</u>."
> (emphasis added)

This statute makes it clear that the contents of the box are property of the surviving joint tenant. The statute places express reliance on the <u>agreement</u> relating to the box, not upon who has the key. This provision, together with the fact that the certificates were in the name of "Ella D. Patten or Donald W. Patten" establishes Donald's ownership of the certificates.

We hold that Ella Patten created joint tenancies in favor of Donald in the checking account and certificates of deposit under gift or contract theory. We therefore affirm the judgment of the District Court.

We concur:

_____
Justice

_____
Chief Justice

_____

_____
Justices

_____
Honorable Douglas G. Harkin
District Judge, sitting in
place of Mr. Justice
Frank B. Morrison, Jr.

9

Mr. Justice John Conway Harrison dissenting.

I dissent. This Court found valid Totten Trusts in State Board of Equalization v. Cole (1948), 122 Mont. 9, 195 P.2d 989. In Cole, supra, the state tried to impose inheritance taxes upon assets in the decedent's joint savings accounts, and series "G" United States Savings Bonds held in joint names. This Court found the assets in the joint bank accounts transferred to the co-depositor not subject to tax, however the bonds were subject to the tax. The funds in the joint bank accounts transferred as inter vivos gifts because delivery, intent and acceptance occurred during the decedent's lifetime. Intent is established by signing a signature card containing an agreement that the deposit was payable to either of the co-depositors. This Court reasoned that joint bank accounts vest an inter vivos gift because of the co-depositor's right to withdraw funds at any time. The bonds failed to transfer as inter vivos gifts because even though the bonds were payable to the decedent or another party, delivery never occurred because she exercised complete control over them. She kept them in a safety deposit box and "none of the alternate payees ever had access to this safety deposit box or even attempted to exercise control over the bonds." 122 Mont. at 21, 195 P.2d at 995, 996.

In Casagranda v. Donahue (1978), 178 Mont. 479, 585 P.2d 1286, we found joint bank accounts again to be joint tenancy of the funds with right of survivorship. Funds in the accounts became individual property of surviving depositor and are not part of the estate. In Casagranda,

supra, the decedent established joint savings accounts with the respondent. The executrix of the estate sought to quiet title on the joint bank accounts and included those funds in the estate. We cited Cole, supra, saying "the signing of the signature card payable to either of the co-depositors or the survivor, settles the question of donative intent to make a joint tenancy." 178 Mont. at 483, 585 P.2d at 1288. Those deposits passed to the co-depositor by right of survivorship. In both Cole and Casagranda, the surviving co-depositors signed the signature cards along with the decedents.

In Anderson v. Baker (1982), 196 Mont. 494, 641 P.2d 1035, this Court again used gift theory analysis to "hold that where, as here, a depositor during his or her lifetime raises the issue of ownership of funds in a joint tenancy account, the statements on the signature card are not conclusive and additional evidence may be examined to ascertain the true intent of the parties." 196 Mont. at 500, 641 P.2d at 1038. Anderson, supra, involved a decedent who during her lifetime established a joint savings account and C.D.s with the respondent. Just prior to her death, she sought to regain exclusive control over the accounts, by commencing action for the return of her passbook on the savings account and the C.D.s for the removal of the respondent's name. We held that the filing of the action to regain exclusive control of the accounts during the decedent's lifetime, cut off the respondent's right of survivorship. Therefore, the deposits were part of the estate.

In the instant case, Ella Patten established several

joint accounts but refused to relinquish control over these deposits. She never sought signatures from the respondent, nor informed him of the existence of these joint accounts. She remained secretive of all her financial dealings.

I distinguish the instant case from Cole and Casagranda for the following reasons: in both Cole and Casagranda, all parties executed signatures on the signature cards; and all of the depositors listed on the accounts knew of the existence of the accounts and could withdraw any and all of the deposits at any time. In the instant case, respondent did not sign the signature card. The lack of knowledge of these accounts precluded any withdrawl by respondent of any deposit from the accounts. I would hold that these joint accounts failed to create a joint tenancy of the funds because Ella Patten failed to make a valid inter vivos joint tenancy account Totten Trust. Therefore, the funds withdrawn by respondent out of the account are part of the estate and not individual property.

Respondent contends that the agreement between the bank and Ella Patten made him a third party beneficiary. Respondent cites Ludwig v. Montana Bank and Trust Co. (1939), 109 Mont. 477, 98 P.2d 379, for the proposition that a contract between the bank and joint depositors creates a power to draw upon the funds by either depositors and that the bank must honor this contract. This power remains valid even after the death of a co-depositor. While this power to draw existed in Ludwig, supra, because both depositors signed the signature card and had access to the account, it did not exist in the instant case. Respondent's power to withdraw these funds never existed during Ella Patten's

lifetime. She effectively precluded that by withholding information from respondent about the existence of these accounts, the possibility of control can not occur without knowledge. Respondent asserts this is a clear case of a third party beneficiary contract. However, Ella Patten never demonstrated or presented intentions to create a third party beneficiary contract for Donald. She demonstrated only an intended future interest in the accounts and not a present interest. This makes the transaction testamentary in nature.

Respondent contends Seavey v. Fanning (Ind. 1975), 333 N.E.2d 80, represents a better approach to resolving the validity of Totten Trusts. The Indiana Supreme Court found valid survivorship rights in C.D.s, that the decedent (Fanning) established in her name and the name of another person (Seavy), in joint tenancy with the right of survivorship. Fanning controlled the C.D.s in a lock box without informing Seavey of their existence. The Indiana Court applied third party beneficiary theory to establish Seavey's right to collect the proceeds from the C.D.s. This theory avoids the problem of the delivery requirement of gift theory. It retains the intent requirement but presumes delivery even if the beneficiary lacks any knowledge of joint accounts. The court found "a gift in praesenti of a contingent contractual right." I reject this rational and believe gift theory is the proper approach to take.

Respondent asserts under gift theory, Ella Patten properly created joint tenancies with right of survivorship. He contends the signature card settled the issue of intention. Delivery occurred by the creation of the written

agreement to establish joint accounts, acceptance can be presumed.

I agree that signing a signature card creates the presumption of intent. "Cole stood for the proposition that, in Montana, signing a signature card containing an agreement that the deposit is payable to either of the co-depositors or survivors settles the question of donative intent to make a joint tenancy." Anderson, 196 Mont. 494 at 499, 641 P.2d at 1038. Casagranda, 178 Mont. at 483, 585 P.2d at 1288. Respondent claims Ella Patten completed delivery by the written agreement (the signature card). I disagree.

In Anderson this Court said:

> "We are also mindful that the signature cards are forms containing language drafted by the depository institution. While the language thereon may very well describe agreements between the depositor and the depository, it can hardly be expected to accurately express the intentions and relationships between the joint tenants about which the depository typically has little, if any, knowledge."

Anderson, 196 Mont. at 501, 502, 641 P.2d at 1038.

Respondent contends the agreement created a co-equal right to control over the deposit. He cites, "[t]he actual gift made is not the money in the bank but the gift of the co-equal right with the donor to exercise control over the depositor." Cole, supra. While it remains true in most instances that joint accounts create co-equal rights in the depositors to exercise control over the deposits, such is not true in the instant case. Ella Patten completely precluded Donald Patten from exercising any control over the joint accounts, prior to her death. She "refused to obtain a signature" of his for the signature cards. She never

-14-

disclosed to him the existence of these accounts. Without a present right to control the deposit there is no delivery. This right to control must be exercisable and not hypothetical.

I would reverse and remand to the District Court for entry of judgment for appellant/plaintiff for the sum of $76,487.16 plus interest.

_John Conway Harrison_
Justice

Mr. Chief Justice Frank I. Haswell, dissenting:

I join in the dissent of Mr. Justice Harrison. I would emphasize that it is pure fiction to hold that Ella Patten had any intention during her lifetime to make a gift of any part of the certificates of deposit or the bank account to Donald Patten under the facts of this case. She withheld knowledge of the existence of both from Donald during her lifetime to enable her to retain exclusive control over the same.

Likewise, the joint tenancies cannot be sustained on a contract theory for the same reasons.

Ella had exclusive control over the certificates of deposit and the bank account during her lifetime by the device of withholding knowledge of the same from Donald. In my view, the proceeds thereof are properly a part of her estate. Ella Patten should not be permitted to have her cake and eat it too during her lifetime.

_____
Chief Justice


Mr. Justice Daniel J. Shea:

I join in the dissents of Mr. Justice Harrison and Mr. Chief Justice Haswell.

_____
Justice

16