No. 92-203

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

STANLEY DUENSING and DAVID DUENSING,
a general partnership, d/b/a
THE PARROT CONFECTIONERY,

      Plaintiffs and Appellants,

  -vs-

THE TRAVELER'S COMPANIES,
a Connecticut corporation,

      Defendant, Respondent and Cross-Appellant.

APPEAL FROM: District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

      For Appellants:

          W. William Leaphart, Leaphart; Leaphart Law Firm,
Helena, Montana

      For Respondent:

          James R. Walsh, Robert J. Vermillion; Smith, Walsh,
Clarke & Gregoire, Great Falls, Montana

Submitted on Briefs: August 13, 1992

Decided: March 29, 1993

FILED

MAR 29 1993

Filed: _Ed Smith_
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Stanley and David Duensing appeal from an order of the First Judicial District Court, Lewis and Clark County, granting summary judgment in favor of the Travelers Companies. On cross-appeal, the Travelers Companies asserts an alternative basis for the granting of summary judgment in its favor. We reverse and remand.

We state the issues on appeal as follows:

1) Did the District Court err in granting summary judgment in favor of the Travelers Companies based on the contamination exclusion contained in the insurance policy?

2) If the District Court erred in granting summary judgment in favor of the Travelers Companies based on the contamination exclusion, can this Court nonetheless uphold the grant of summary judgment pursuant to the governmental action exclusion?

3) Are the Duensings entitled to entry of summary judgment in their favor?

The facts in this case are relatively straightforward. On August 28, 1990, Stanley and David Duensing (the Duensings), a partnership doing business as the Parrot Confectionery (the Parrot), discovered that a worker had been exposed to Hepatitis A. The Duensings immediately informed the City-County and State Health Departments and their insurance agency, Burrington Insurance Agency (Burrington). The next morning, the Duensings, their attorney, their accountant, Will Selser and Larry Fenster of the Lewis and Clark City-County Health Department (the health department), and an agent from Burrington met to discuss the possible problems

2

associated with the hepatitis exposure. Later that same day, the Montana Department of Health and Environmental Sciences issued a "Notice of Embargo" to the Parrot, which prohibited the movement or sale of any of the Parrot's candy without permission. Although the Parrot's inventory had not been tested, the Duensings agreed to destroy voluntarily all existing inventory.

On August 31, 1990, the Duensings destroyed the Parrot's entire inventory of candy and food. They subsequently submitted a claim on their business owners' property insurance policy with Travelers for loss of contents and business interruption as a result of the destruction of the inventory. Travelers denied coverage, relying on the "contamination exclusion" and the "governmental action exclusion" contained in the policy.

The Duensings then filed a declaratory action against Travelers for a determination of rights of the parties under the insurance contract, waiver and estoppel. Both parties moved for summary judgment based on the contamination and governmental action exclusions. After briefing and oral argument, the District Court granted summary judgment for Travelers based on the contamination exclusion; it did not address the governmental action exclusion.

Did the District Court err in granting summary judgment in favor of Travelers based on the contamination exclusion contained in the insurance policy?

Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. Faced with cross motions for summary judgment on the same legal questions, with both parties

asserting an absence of factual issues as to those questions, the District Court concluded that Travelers was entitled to summary judgment based on the contamination exclusion.

The contamination exclusion relied on by the District Court reads:

> 2. We will not pay for loss or damage caused by or resulting from any of the following: . . .
>
> d. . . . (7) The following causes of losses to personal property: . . .
>
> (d) Evaporation, loss of weight, contamination, exposure to light or change in flavor, color, texture or finish. [Emphasis added.]

The District Court determined that the policy did not require scientific findings of contamination and that reasonable belief of such contamination destroyed the business value of the inventory and was sufficient to fall within the exclusion. The District Court also stated that the fact that the contamination was not confirmed through testing was not material for purposes of the insurance contract. The court concluded that, given the common sense, usual meaning of the language, the parties had intended to exclude coverage for loss of the Parrot's inventory, which was destroyed because of the high probability of contamination. Thus, the contamination exclusion of the policy precluded coverage.

The Duensings contend that the District Court incorrectly concluded that the inventory was contaminated within the language of the contamination exclusion. They argue that the District Court erred by interpreting the contamination exclusion to exclude anything other than actual contamination. They further argue that,

4

contrary to the rule of construing exclusions in insurance policies strictly against the insurer, the District Court enlarged the contamination exclusion to include suspected contamination.

The interpretation of an insurance contract is a question of law. Truck Ins. Exchange v. Waller (1992), 252 Mont. 328, 331, 828 P.2d 1384, 1386. Therefore, we review whether the District Court correctly interpreted the policy in question. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 475, 803 P.2d 601, 603.

Well-established principles guide our interpretation of insurance contracts. The language of the insurance policy governs if it is clear and explicit. Waller, 252 Mont. at 331, 838 P.2d at 1386. Furthermore, exclusions from coverage will be narrowly and strictly construed because they are contrary to the fundamental protective purpose of an insurance policy. Farmers Union Mut. Ins. Co. v. Oakland (1992), 251 Mont. 352, 356, 825 P.2d 554, 556.

In this case, the contamination exclusion is unambiguous, clear and explicit: Travelers will not pay for loss or damage to personal property caused by or resulting from contamination. The exclusion from coverage requires two elements. First, there must be "contamination;" and second, the contamination must cause loss to personal property. Only if contamination exists does it become necessary to determine whether the contamination caused the loss to personal property.

The District Court concluded that the high probability of contamination and the reasonable belief of contamination were

5

sufficient to exclude coverage. In essence, these conclusions define "contamination" to include suspected contamination. In interpreting insurance contracts, the words of the policy are to be understood in their usual meaning; common sense controls. James v. Prudential Ins. Co. (1957), 131 Mont. 473, 477, 312 P.2d 125, 127 (citations omitted).

In Hi-G, Inc. v. St. Paul Fire and Marine Ins. Co. (1st Cir. 1968), 391 F.2d 924, 925, the First Circuit Court of Appeals defined contamination as the introduction of a foreign substance that injures the usefulness of the object. Similarly, the Fifth Circuit Court of Appeals defined contamination as a condition of impurity resulting from mixture or contact with a foreign substance, and stated that this definition is consistent with the common understanding of contamination. American Casualty Co. of Reading, Pennsylvania v. Myrick (5th Cir. 1962), 304 F.2d 179, 183.

The Court of Appeals of Texas adopted the definition of contamination from Myrick in Auten v. Employers Nat. Ins. Co. (Tex.App. 1987), 722 S.W.2d 468, 469. In Auten, an exterminator sprayed a toxic pesticide inside of Auten's home, and expert testimony established that the toxin was deposited on surfaces throughout the home. After touching these surfaces, the members of the Auten family absorbed the pesticide through their skin and became ill. Auten, 722 S.W.2d at 469. As in Myrick, the contamination involved the presence of a foreign substance, thus triggering the contamination exclusion.

We adopt the rationale expressed in Hi-G, Myrick and Auten,

and conclude that contamination requires the actual presence of a foreign substance. We conclude, therefore, that the plain, ordinary meaning and understanding of "contamination" is actual contamination, not suspected contamination. Absent proof of actual contamination, the contamination exclusion does not bar coverage for the Duensings' losses.

Accordingly, we examine the record to determine whether it contains any proof of actual contamination. In this case, the candy was destroyed before it was tested, thereby preventing anyone from verifying whether it was actually contaminated by the hepatitis virus. Nonetheless, Travelers urges us to conclude that the candy was contaminated because the health department made a "finding" that the inventory was contaminated. The Duensings assert that the parties did not complete the necessary statutory steps to allow anyone to conclude that the inventory was actually contaminated. The parties base their respective arguments on § 50-31-509, MCA, which reads in pertinent part:

> **Detainer of adulterated or misbranded articles.** (1) If an agent of the department finds or has probable cause to believe that any food, drug, device, or cosmetic is adulterated or so misbranded as to be dangerous or fraudulent within the meaning of this chapter, he shall affix to the article a tag or other appropriate marking giving notice that the article is or is suspected of being adulterated or misbranded and has been detained or embargoed and warning all persons not to remove or dispose of the article by sale or otherwise until permission for removal or disposal is given by the agent or the court. . . . The owner of an embargoed article or another authorized person and the department may enter into a disposal agreement providing for the disposal, reconditioning, or other disposition of the embargoed article. . . .
>
> (2) If an article detained or embargoed under

7

subsection (1) is found by the agent to be adulterated or misbranded and a disposal agreement is not executed as provided in subsection (1), the agent shall petition the justice of peace, city judge, or district court . . . for an order for condemnation of the article. If the agent finds that an article so detained or embargoed is not adulterated or misbranded, he shall remove the tag or other marking.

    (3) If the court finds that a detained or embargoed article is adulterated or misbranded, the article shall, after entry of the decree, be destroyed . . . .

Travelers notes that § 50-31-509(2), MCA, requires the health department to make a "finding" of contamination before petitioning the court. On the basis of Larry Fenster's statement to the Duensings that he would petition the court for an order to destroy the inventory if they would not agree to destroy it voluntarily, Travelers argues that Fenster "found" the inventory to be contaminated. We disagree.

Fenster's affidavit clearly shows that he had made no finding of contamination, but only a finding of probable cause. The affidavit of Larry Fenster reads:

> In my handwritten notes of August 30, 1990 . . . [I stated that] all of this product must be "considered contaminated." In making this statement, I was not implying that there was any factual or scientific finding of contamination. There had been no testing of the candy. This statement was merely my finding, on behalf of the Department, that, since a candy maker was diagnosed with jaundice, we had "probable cause to believe" the product was contaminated . . . .

Similarly, Will Selser, another health department official, explained in his affidavit that:

> [a]s of the date of the Aug. 31, 1990, destruction of the candy, there had been no laboratory testing of the candy and thus there was no factual determination as to whether or not the candy was, in fact, contaminated.

8

Furthermore, comparing these facts to the statutory procedure set forth in § 50-31-509, MCA, does not support a conclusion that the health department had made a finding of contamination. Subsection (1) of § 50-31-509, MCA, requires either a finding of adulteration or probable cause to believe an article is adulterated before the health department can issue an embargo order. Under subsection (2), if no disposal agreement is reached and the agent finds that the object is adulterated, the agent can petition the court for an order of condemnation; subsection (2) also is clear that the agent could find at this post-embargo stage of the process that the article is not adulterated. Finally, under subsection (3), the embargoed object can be ordered to be destroyed only after a court finds that it is adulterated. Again, at this third stage of the process, the court could find that the object was not adulterated.

Fenster's statement that he would petition the court if the parties did not reach a disposal agreement does not require us to conclude that the health department "found" that the inventory was contaminated. The parties here completed subsection (1) of the statutory procedure based on a "probable cause" determination and reached a disposal agreement. The parties did not need to proceed through subsections (2) and (3) of § 50-31-509, MCA, to a finding of adulteration.

Given the clear language of § 50-31-509, MCA, and the affidavits of the health department officials, we conclude that no finding of contamination had been made. No other evidence was

9

offered that the inventory actually was contaminated. We hold that the District Court erred as a matter of law in interpreting the contamination exclusion to preclude coverage in this case.

If the District Court erred in granting summary judgment in favor of Travelers based on the contamination exclusion, can this Court nonetheless uphold the grant of summary judgment pursuant to the governmental action exclusion?

On cross-appeal, Travelers asserts that the governmental action exclusion provides an alternative basis for summary judgment in its favor. We have affirmed the correct conclusion of a trial court even though that conclusion may have been arrived at for the wrong reason. See Wolfe v. Webb (1992), 251 Mont. 217, 234, 824 P.2d 240, 250. We cannot do so in this case, however, because we conclude that the governmental action exclusion does not preclude coverage for the Duensings' losses.

The governmental action exclusion in the Duensings' policy with Travelers excludes coverage for "loss or damage caused directly or indirectly by . . . [s]eizure or destruction of property by order of governmental authority." Travelers argues that both the seizure and destruction clauses of the governmental action exclusion apply to the facts at hand. Specifically, Travelers argues that the seizure clause bars coverage because the embargo constituted a "constructive seizure," thus triggering the exclusion. Travelers also asserts, under the destruction clause, that the embargo order (as a governmental order) caused the destruction of the candy. We address each clause in turn.

In support of its contention that the seizure clause bars coverage under these facts, Travelers argues that "constructive

10

seizure" via the embargo satisfies the exclusion. Webster's Third New International Dictionary defines seizure as the act of taking possession of persons or property by virtue of a warrant or by legal authority.

Here, although the embargo restricted the movement of the inventory, the embargo order did not authorize governmental agents to take possession of the inventory; nor was possession taken. Therefore, no seizure occurred. As discussed above, the rule of strict construction of exclusions from insurance coverage prevents us from expanding the plain language of this exclusion to include constructive seizure. See Oakland, 251 Mont. at 356, 825 P.2d at 556. We hold that the Duensings' losses are not excluded by the seizure clause of the governmental action exclusion.

Travelers' reliance on the destruction clause of the governmental action exclusion also is misplaced. For this clause to apply, property must be destroyed by order of governmental authority, and such a destruction then must cause, directly or indirectly, the loss claimed by the insured.

The embargo order only restricts the sale or movement of the property; it does not order or require the destruction of the property, nor could it do so under § 50-31-509, MCA. An embargo pursuant to § 50-31-509, MCA, merely serves as a means of preserving the status quo until further proceedings occur. Indeed, under § 50-31-509(3), a governmental authority can only require the destruction of property after a court finds that the object is adulterated. Thus, it is clear that the inventory was not

11

destroyed by order of governmental authority in this case.

Travelers additionally notes that Will Selser, in describing the embargo order in his first affidavit, stated that the Duensings were required to destroy the inventory. According to Travelers, this demonstrates that the inventory was destroyed pursuant to governmental order. However, Will Selser's second affidavit controverts Travelers' argument. He stated:

> In my prior affidavit when I stated that the Duensings were "required" to destroy the food, I merely meant that they were being told by me and my staff that if they did not voluntarily destroy the candy, the Department would take the next step and petition the Court for an order to destroy the candy. In fact, no such petition had been filed with the Court. The only governmental order in effect was the Order of Embargo from the Montana Department of Health. The Department had no authority to "require" the Duensings to do anything beyond comply with the embargo. [Emphasis added.]

Absent a court order under subsection (3) of § 50-31-509, MCA, the health department could not order the destruction of the inventory. No court order for the destruction of the Parrot's inventory was obtained. We hold, therefore, that the inventory was not destroyed by order of governmental authority and the destruction clause of the governmental action exclusion does not bar coverage in this case.

Are the Duensings entitled to entry of summary judgment in their favor?

Before the trial court, both parties moved for summary judgment as a matter of law on the question of insurance coverage under the contamination and governmental action exclusions of the Travelers' policy. The parties presented identical legal theories, albeit seeking opposite legal conclusions; both asserted that no

12

genuine issues of material fact existed as to the legal theories propounded. Travelers now argues that factual questions remain "regarding the actions of the Health Department."

The fact that both parties have moved for summary judgment does not establish, in and of itself, that no genuine issues of material fact exist. A party may assert that there is no remaining factual issue if his legal theory is accepted and still maintain that there is a genuine dispute as to material facts if his opponent's theory is adopted. Faith Lutheran Retirement Home v. Veis (1970), 156 Mont. 38, 47, 473 P.2d 503, 507. Conversely, if the parties presented identical legal theories to the trial court, while arguing that no issues of fact remain, neither party can then maintain on appeal that factual questions have surfaced on that very same issue. A trial court has no duty to anticipate such possible proof. Id.

In this case, Travelers has asserted for the first time on appeal that "factual questions remain regarding the actions of the Health Department." We have stated many times that this Court will not hear on appeal an issue not presented to the trial court. Wyman v. DuBray Land Realty (1988), 231 Mont. 294, 299, 752 P.2d 196, 200. In any event, Travelers cannot rely on speculative, fanciful or conclusory statements to raise a genuine issue of material fact, but must specify the precise facts which are disputed. Sprunk v. First Bank System (1992), 252 Mont. 463, 466, 830 P.2d 103, 105. Travelers' assertion is conclusory and speculative and does not identify any genuine factual issue in

13

dispute.

This Court has the power to reverse a district court's grant of summary judgment and direct it to enter summary judgment in favor of the other party only when it is clear that all of the facts bearing on the issues are before the court. Canal Ins. Co. v. Bunday (1991), 249 Mont. 100, 108, 813 P.2d 974, 979. Given the record before us and our determination that the contamination and governmental action exclusions do not preclude coverage for the Duensings' losses, we conclude that the Duensings are entitled to entry of summary judgment on the issues of coverage under the contamination and governmental action exclusions.

We reverse and remand for entry of summary judgment consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

14