IN THE MATTER OF THE ESTATE OF WILDUS FANNING, DECEASED. MARCELLA SEAVEY *v.* ESTATE OF WILDUS FANNING.

[No. 875S200. Filed August 28, 1975.]

*Stephen W. Adair, Adair, Perry, Beers, McAlister & Mallers,* of Fort Wayne, for appellant.

*Wilson E. Shoup,* of Angola, for appellee.

PRENTICE, J.—This matter is before us on the petition of the appellee to transfer from the Court of Appeals, Third District, and appellant's answer thereto urging denial of the petition for failure to raise a proper issue by the petition under Ind. R. Ap. P. 11(B)(2). Appellant's answer correctly reflects that the petition fails to raise any of the grounds for transfer enumerated in the rule. Nevertheless, we regard the issue of the case as being of sufficient public importance to warrant our consideration, in view of conflicting decisions, and we grant transfer notwithstanding the aforementioned technical deficiency. *Troue* v. *Marker,* (1969) 253 Ind. 284, 252 N.E.2d

800; *Baker, et al.* v. *Fisher, et al.,* (1973) 260 Ind. 513, 296 N.E.2d 882.

The case involves a determination of ownership of bank certifiicates of deposit, upon their face payable to Wildus Fanning or Marcella Seavey (Appellant) "either of them with the right of survivorship and not as tenants in common." The certificates were found in the lock box of Wildus Fanning, after her death, and delivered to the appellant at her request by the bank. Upon petition of Appellee (the Estate of Wildus Fanning), the trial court determined ownership to be in the appellee upon the following evidence: Wildus Fanning purchased the certificates with her separate funds. No signature card or deposit agreement had been executed at the time the certificates were purchased, but at the time of purchase, Wildus signed both the original certificates and the carbon copies thereof retained by the bank. At the time of purchase, Wildus told the bank clerk that she wanted the certificates issued to her and to Appellant "either or to the survivor." Appellant had no knowledge of the existence of the certificates until they were found in the lock box. Prior to the purchase of the certificates, Wildus had stated to Appellant's daughter that she intended to take care of the appellant, but the appellant remarked, upon learning of the certificates, that she was sure that they were not intended for her alone. These last mentioned circumstances may have influenced the judgment of the trial court, but we do not consider them to be material to or in conflict with our holding.

The case was litigated in the trial court under the "gift theory" of *Zehr* v. *Daykin,* (1972) 153 Ind. App. 537, 288 N.E.2d 174, also decided by the Court of Appeals, Third District, and the trial court awarded the certificates to the appellee, apparently upon that theory. On appeal, the appellant urged not only that the court erred under the evidence related and the "gift theory" of the *Zehr* case but also, in the alternative, that the judgment should be reversed under the "third party beneficiary theory."

The Court of Appeals reversed the trial court in an opinion published at 315 N.E.2d 718, expressly rejecting the "gift theory" rule of *Zehr* v. *Daykin, supra,* as a viable theory for this type of case. Appellee, by its brief in support of the petition to transfer, argues that the decision of the Court of Appeals contravened a ruling precedent of this Court holding that an appellate court should affirm the judgment of the trial court, if that judgment is sustainable upon any ground, citing *Notter* v. *Beasley,* (1960) 240 Ind. 631, 166 N.E.2d 643, and *Ross, et al.* v. *Review Board of Indiana Employment Security Division,* (1962) 243 Ind. 61, 182 N.E.2d 585. Such rule, however, can be of no aid where the theory under which the trial court made its decision was expressly rejected. It is as if the trial court applied an incorrect theory or a non-existing theory. The rule proferred by the appellee has application where the evidence supports the judgment upon one viable theory but not upon another. It is understandable that Appellee should be dismayed that a judgment correctly rendered in its favor under the case law then obtaining should be reversed by reason of "court-changed law." Otherwise, however, the law could not change and grow with the times nor could judicial error be corrected.

We agree with the decision of the Court of Appeals that the "gift theory" of *Zehr* v. *Daykin, supra,* should be rejected; and we hereby adopt the opinion of that court, as authored by Judge Staton, which is as follows.

"The trial court gave possession of the certificates to the administrators. Marcella Seavey's appeal to this Court raises this issue:

"Did Marcella Seavey have a contractual right to possession of the certificates after her mother's death?

Our review concludes that Marcella Seavey did have a contractual right to possession of the certificates. Previous knowledge of the certificates is not an indispensable element of a contractual possessory right. In Section I, the contractual right to possession is discussed

more fully, and in Section II, the intent of the donor-creditor, which is equally important, is discussed. We overrule *Zehr* v. *Daykin,* (1972) 153 Ind. App. 537, 288 N.E.2d 174. The trial court's judgment is reversed.

## "I.

### *"Contractual Right*

"As early as 1886, Indiana recognized the inherent contractual nature of certificates. In *Long* v. *Straus,* (1886) 107 Ind. 94, 95, 6 N.E. 123, our Indiana Supreme Court wrote:

" 'This instrument is more than a mere receipt for it embodies an agreement. . . . The language used creates a contract, and the law implies, as a part of the contract, that upon reasonable demand the depositor is entitled to receive back that which belongs to him. The deposit of money is a transaction well-known to the law, and it is one out of which well-defined legal rights emerge; . . .'

Describing the essential nature of the resulting contract, the Court continued:

" 'It is a written acknowledgment of the receipt of money, and a promise to repay it on reasonable demand.'[1] *Long* v. *Straus, supra,* 107 Ind. at 97. See also *DeVay* v. *Dunlap,* (1893) 7 Ind. App. 690, 35 N.E. 195; *Mock* v. *Stultz,* (1932) 97 Ind. App. 138, 179 N.E. 561 and Note, 8 U. VAL. L. REV. 140 (1973), n. 30.

"The certificates of deposit purchased by Wildus Fanning were third party beneficiary contracts which made Marcella Seavey a donee-beneficiary. The RESTATEMENT OF CONTRACTS § 133 (1932) defines donee-beneficiary as follows:

" '(1) Where performance of a promise in a contract will benefit a person other than a promisee, that person is . . .

---

"1. We note that a certificate of deposit may be accorded the status of a negotiable instrument under the Uniform Commercial Code as adopted by Indiana. See Ind. Code § 26-1-3-104; Burns § 19-3-104 (1964). It might also be accorded the status of a security under Article Eight of the Uniform Commercial Code. See Ind. Code § 26-1-8-102; Burns § 19-8-102 (1964). BANKS AND BANKING (Michie 1973) provides a definition of a certificate of deposit more attuned to a certificate attaining negotiable instrument or security status. See Volume 5b, Chapter 9, § 313 at 234-5.

" '(a) A donee-beneficiary, if it appears from the terms of the promise in view of the accompanying circumstances that the purpose of the promise in obtaining the promise of all or part of the performance thereof is to make a gift to the beneficiary or to confer upon him a right against the promisor to some performance neither due nor supposed nor asserted to be due from the promisee to the beneficiary; . . .

" '(2) Such a promise as is described . . . is a gift promise. . . .'

Also see *National Surety Co.* v. *Foster Lumber Co.,* (1908) 42 Ind. App. 671, 85 N.E. 489. A third party beneficiary contract may have many other provisions such as the time that the money shall remain on deposit, rate of interest, and presentment of the certificate for withdrawal. *Badders* v. *Peoples Trust Co.,* (1957) 236 Ind. 357, 140 N.E.2d 235.

"The donee-beneficiary does not need to know of the certificate's existence to effect a valid contingent contractual right in the donee-beneficiary. RESTATEMENT ON CONTRACTS § 133, et seq. Thus Marcella Seavey's lack of knowledge was not an indispensable element in determining her right to possession of the certificates.

"Wildus Fanning's purchase of the certificates in the form presented here was a gift *in praesenti* of a contingent contractual right.[2] *Hibbard* v. *Hibbard,* (1947) 118 Ind. App. 292, 73 N.E.2d 181. This contingent contractual right could have been extinguished during the lifetime of Wildus Fanning. Wildus Fanning could have extinguished the contingent contractual right by requesting the bank to change the donee-beneficiary or by expressing a contrary intent. Wildus Fanning did neither. Indiana recognizes the right of a donor-creditor to rescind or modify a third party beneficiary contract. A comprehensive statement of this rule is found in 17 AM. JUR. 2d *Contracts* § 317 (1946):

"2. Ind. Code § 32-4-1-1; Burns § 51-104 (Code Ed.) provides for the joint ownership of personal property in Indiana where the status of that ownership is expressed upon the face of the instrument.

" '317. Rescission or modification of contract.

" 'According to the rule followed in most jurisdictions, the parties to a contract entered into for the benefit of a third person may rescind, vary, or abrogate the contract as they see fit, without the assent of the third person, at any time before the contract is accepted, adopted, or acted upon by him, and such rescission deprives the third person of any rights under or because of such contract. This rule has been applied, for instance, in the case of an agreement to pay another's debts. Moreover the statutes of some jurisdictions provide in effect that a contract may be revoked before it is accepted by the beneficiary. . . .'

Also see *Zimmerman* v. *Zehendner*, (1905) 164 Ind. 466, 73 N.E. 920; *Ransdel* v. *Moore*, (1889) 153 Ind. 393, 53 N.E. 767.

"These acceptance facts were stipulated: 'After the death of Wildus Fanning, Marcella Seavey obtained possession of the said certificates of deposit, received $431.03 interest on said certificates, has cashed the certificates, and has retained the interest and proceeds.' When Marcella accepted the contractual right given to her in the certificates, her right to the possession of the certificates of deposit became absolute. In the absence of a proceeding which contests the absolute right to possession, a custodian has a duty to deliver the certificates. *Blackard* v. *Monarch's Manufacturers & Distributors, Inc.*, (1960) 131 Ind. App. 514, 521-22, 169 N.E.2d 735, RESTATEMENT OF CONTRACTS § 135 (1932). Also see *Hibbard* v. *Hibbard*, *supra;* Ind. Code § 28-1-20-1(a) (Burns Code Ed.).

"II.

"*Intent*

"The intent of the donor-creditor is of paramount importance in a third party beneficiary contract. *Voelkel* v. *Tohulka*, (1957) 236 Ind. 588, 141 N.E.2d 344. This unique contractual device, which has experienced considerable difficulty fitting into the common law theoretical molds, may serve several intentions. One intent may be to avoid any probation of the

donor-creditor's estate.[3] A second intent for the device might be for only temporary use during illness or absence from the State. A third intent may be to use the device as a security.[4]

"Without an expression to the contrary, the third party donee-beneficiary contract creates a rebuttable presumption that the usual rights incident to jointly owned property with the right of survivorship was intended. *Miles* v. *Hanten*, (1969) 83 S. D. 635, 164 N. W. 2d 601. Also see Ind. Code § 28-1-20-1, *supra*, and Ind. Code § 28-4-4-2 (Burns Code Ed.). The burden of proof is upon the party who wishes to show a contrary intent from that expressed in the third party beneficiary contract.

"In *Estate of Harvey* v. *Huffer*, (1955) 125 Ind. App. 478, 126 N.E.2d 784, this Court stated that the intent expressed in a third party beneficiary contract will be given full effect:

" '. . . [I]t is settled law in Indiana that where the free will intent of the parties to create a joint bank account, with right of survivorship, is expressed in clear and unequivocal language in a written instrument, executed in connection with the account, such intention will be given full effect.'
*Estate of Harvey* v. *Huffer*, *supra*, 125 Ind. App. at 480-1.

"The third party beneficiary contract entered into by Wildus Fanning and the bank could not be varied in the absence of fraud, undue influence, duress or mistake, which may be shown by parol evidence.[5] The clear expressed intent of

---

"3. For exemplary considerations of this problem see Kepner, *The Joint and Survivorship Bank Account—A Concept without a Name*, 41 CAL. L. REV. 596 (1953); Kepner, *Five More Years of Joint Bank Account Muddle*, 26 U. CHI. L. REV. 376 (1959) and Hines, *Personal Property Joint Tenancies; More Law, Fact and Fancy*, 54 MINN. L. REV. 509, 526 (1970).

"4. *See* footnote 1, *supra*.

"5. We note that other jurisdictions adhering to the contract theory adopted here have successfully struggled with the antiquated parol evidence rule. See *Steinhauser* v. *Repko*, (1972) 30 Ohio St. 2d 262, 285 N.E.2d 55, *Fecteau* v. *Cleveland Trust Co.*, (1960) 171 Ohio St. 21, 167 N.E.2d 890 and *Johnson* v. *Meilke*, (1970) 49 Wisc. 2d 60, 181 N.W. 2d 503. Difficulties arise most often in this regard in a context outside the scope of the facts before us; generally where a joint account was

Wildus Fanning was to give her daughter, Marcella Seavey, the certificates. *Estate of Harvey* v. *Huffer, supra; Blanchette* v. *Blanchette,* (1972) 362 Mass. 518, 287 N.E.2d 459.

## "III.

### "*Conclusion*

"After Wildus Fanning's death and Marcella Seavey's acceptance of the certificates, only Marcella Seavey had a right to possession of the certificates. She was the survivor and donee-beneficiary. Our review of the stipulated evidence and the reasonable inferences therefrom does not reveal a contrary intent from that expressed in the certificates. There is no evidence of fraud, undue influence, duress or mistake.

"We have adopted the contract theory instead of the gift theory which was properly followed by the trial court in the light of *Zehr* v. *Daykin,* (1972) 153 Ind. App. 537, 288 N.E.2d 174. Only the gift theory was argued in *Zehr* v. *Daykin, supra,* and we responded accordingly.[6] The elemental requirements of the gift theory tend to frustrate the intent of the donor.[7] Some of the requirements—in particular the delivery requirement—defy the usual donor's inclination. Other jurisdictions have adopted the contract theory.[8] We are impressed with and

established merely for the convenience of the depositor. Compare *Gary National Bank* v. *Sabo,* (1972) 151 Ind. App. 258, 279 N.E.2d 248.

"6. For a pointed and well analyzed criticism of the result reached in *Zehr* v. *Daykin,* see Note 8 U. Val. L. Rev. 140 (1973).

"7. The administrators contended in their brief that the certificates of deposit permitted a testamentary disposition in violation of the Indiana Wills Statute. See IC 1971, 29-1-5-2 (Burns Code Ed.). We disagree. This is another common law theory which for many years frustrated the intent of the donor. See footnote 2 of this opinion and Henry's Probate Law and Practice, Vol. 2, § 7 at 1001 (1954); *Blanchette* v. *Blanchette,* (1972) 362 Mass. 518, 287 N.E.2d 459.

"8 The initial recognition of the contractual theory to avoid the restrictions of inter vivos gift theory arose in the case of *Chippendale* v. *North Adams Savings Bank,* (1916) 222 Mass. 499, 111 N.E. 371. The theory was soon adopted by other jurisdictions. See *Deal's Administrator* v. *Merchants and Mechanic Savings Bank,* (1917) 120 Va. 297, 91 S.E. 135 [recently reaffirmed in *Wilkinson* v. *Witherspoon,* (1965) 206 Va. 297, 142 S.E.2d 478] and *Wisner* v. *Wisner,* (1918) 82 W. Va. 9, 95 S.E. 802 [reaffirmed in *DeLong* v. *Farmers Building & Loan Assoc.,*

persuaded by the apparent success of the contract theory in these jurisdictions. *In re Staver,* (1935) 218 Wis. 114, 260 N. W. 655; *Johnson* v. *Meilke,* (1970) 49 Wisc. 2d 60, 181 N. W. 2d 503 and *Rhorbacker* v. *Citizens Building Assoc. Co.,* (1941) 138 Ohio St. 273, 34 N.E.2d 751.[9] More recently, Iowa, South Dakota, Tennessee and Texas have adopted the third party beneficiary contract theory. *In re Sheimo,* (1968) 261 Iowa 775, 156 N. W. 2d 681; *Miles* v. *Hanten,* (1969) 83 S. D. 635, 164 N. W. 2d 601; *Melhorn* v. *Melhorn,* (1961) 208 Tenn. 678, 348 S. W. 2d 319; *Peoples Bank* v. *Baxter,* (1956) 41 Tenn. App. 710, 298 S. W. 2d 732 and *Krueger* v. *Williams,* (1962) 163 Tex. 545, 359 S. W. 2d 48. Therefore, as noted above, we overrule *Zehr* v. *Daykin, supra.*"

The petition to transfer is hereby granted.

The judgment of the trial court is hereby reversed and the cause is now remanded to the trial court with instructions to find for the appellant, Marcella Seavey.

Givan, C.J., Arterburn, DeBruler and Hunter, JJ., concur.

NOTE.—Reported at 333 N.E.2d 80.

---

(1964) 148 W. Va. 625, 137 S.E. 2d 11]. See also Corbin CONTRACTS § 783 (West 1951).

"9. The *Rhorbacker* v. *Citizens Building Assoc. Co.* decision was based upon a prior Ohio Supreme Court precedent, *Cleveland Trust Co.* v. *Scobie,* (1926) 114 Ohio St. 241, 151 N.E. 373; a case relied upon by this Court in first recognizing the contractual theory in *Estate of Harvey* v. *Huffer,* (1955) 125 Ind App. 478, 126 N.E.2d 784."