Marie Van BLAIRCOM, Appellant,

v.

Alva L. HIRES, Guardian of the Estate of Maude A. Hires, Incompetent, Appellee.

No. 3–577A131.

Supreme Court of Indiana.

July 28, 1981.

---

Terry K. Hiestand, Chesterton, for appellant.

Morris A. Sunkel, Karen L. Hughes, Hoeppner, Wagner & Evans, Valparaiso, for appellee.

Transfer denied; Oral Argument denied.

GIVAN, C. J. (DeBRULER, J., CASE)

GIVAN, C. J., dissents w/opinion. HUNTER, J., concurs in dissent. PIVARNIK, J., not participating. All JJ. concur in denial of Oral Argument, except PIVARNIK, J., not participating.

GIVAN, Chief Justice, dissenting.

The appellee filed a Petition to Transfer from a Memorandum Decision issued by the Court of Appeals, reversing the trial court. The trial judge, the Honorable Alfred J. Pivarnik, is now a justice on this Court, and, therefore, disqualified himself from passing judgment on the petition to transfer. The remaining four justices have divided equally as to whether or not transfer should be granted. Under the rules of this Court, such equal division leaves the decision of the Court of Appeals in full force and effect. I respectfully dissent from that result.

The Court of Appeals decision and the two justices on this Court voting to deny transfer, rely upon a deposit contract entered into with the bank by Marie Van Blaircom and Maude A. Hires to establish a joint savings account in the bank. This contract reads as follows:

"VAN BLAIRCOM Marie M.
HIRES Maude A.

As joint tenants, with right of survivorship and not as tenants in common and not as tenants by the entirety, the undersigned hereby apply for a savings account in

FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF VALPARAISO

and for the issuance of evidence thereof in their joint names described as aforesaid. You are directed to act pursuant to any one or more of the joint tenants' signatures shown below, in any manner in connection with this account and, without limiting the generality of the foregoing, to pay, without any liability for such payment, to any one or the survivor or survivors at any time. This account may be pledged in whole or in part as security for any loan made by you to one or more of the undersigned. Any such pledge shall not operate to sever or terminate either in whole or in part the joint tenancy estate and relationship reflected in or established by this contract. It is agreed by the signatory parties with each other and by the parties with you that any funds placed in or added to the account by any one of the parties are and shall be conclusively intended to be a gift and delivery at that time of such funds to the other signatory party or parties to the extent of his or their pro rata interest in the account. You are authorized to accept checks and other instruments for credit to this account, whether payable to one or more of the parties, and to supply any needed endorsement. You are relieved of any liability in connection with collection of all items handled by you without negligence, and shall not be liable for acts of your agents, sub-agents or others or for any casualty. Withdrawals may not be made on account of such items until collected, and any amount not collected may be charged back to this account, including expense incurred, and any other outside expense incurred relative to this account.may be charged to it. The official proxy committee of the institution is authorized in our absence to cast our vote or votes at any meeting of the members from year to year until this proxy is cancelled in writing."

The initial deposit and all later deposits were the funds of Maude Hires, but were

physically deposited by Marie Van Blaircom or her agents who retained possession of the passbook at all times.

On July 22, 1974, Alva Hires, husband of Maude, was appointed as guardian of the estate and of the person of Maude.

In January, 1975, Alva demanded that Marie deliver the passbook to him. She refused, and on January 22, 1975, withdrew the entire balance of $11,037.87 from the account. Both Maude and Alva made demands for the money, but Marie refused to deliver the same.

Alva, as guardian, brought this action to recover the money, contending that it is the sole property of Maude. The trial court entered judgment in favor of Alva and ordered Marie to deliver the money and any interest that had accrued to Alva. Marie was found not to have any interest in the money.

It should be noted that I.C. 32–4–1.5–3, which provides that during the lifetime of the co-tenants the joint account belongs to the parties in proportion to their net contribution by each to the sums on deposit, is not applicable to the present controversy. This statute was enacted and became effective after this action was begun.

In an unpublished Memorandum Decision, the Court of Appeals reversed the trial court and held that where the intent of the parties to create a joint bank account is expressed in clear and unequivocal language in an instrument executed in connection with an account, such an intention will be given full effect. The Court of Appeals further stated, "parol evidence is not admissible to vary the plain meaning of the clear and unequivocal language." The court further found that Marie and Maude acquired the usual rights incident to jointly owned property with rights of survivorship and awarded one-half of the fund to Marie and one-half to Maude.

It is the view of this writer that the Court of Appeals erroneously focused on the language of the bank contract. This contract controls the relationship between the bank and its customers, but is a nullity insofar as the legal relationship between Marie and Maude is concerned. This case involves a third-party beneficiary contract rather than a two-party contract devised by the bank. *In re Estate of Fanning*, (1975) 263 Ind. 414, 333 N.E.2d 80. In *Fanning*, Wildus Fanning purchased certificates of deposit which, upon their face, were payable to "Wildus Fanning or Marcella Seavey either of them with the right of survivorship and not as tenants in common." Since the certificates were found in Fanning's lockbox at her death and since no signature card or deposit agreement had been executed, Seavey could not claim the certificates under a gift theory as there had been no actual or constructive delivery. This Court pointed out that Indiana recognized the inherent contractual nature of certificates of deposit and therefore rejected the gift theory. The Court held Seavey was a third-party beneficiary of a contract between the bank and Fanning.

In the case at bar, the deposit in the account by Maude was a gift *in praesenti* of a contingent contractual right to Maude. The intent of the donor is "of paramount importance in a third-party beneficiary contract." *Fanning, supra*, at 420, 333 N.E.2d 80, 84.

I.C. 28–1–20–1 is a statutory provision calculated to protect the bank in much the same way as the contract, above quoted in this opinion. In reading the statute in its entirety, it becomes abundantly clear the Legislature intended the statute to be a protection to the bank and in no way an impediment to a separate agreement between the parties as to their respective interests in the joint account, notwithstanding the protective contract with the bank. Specific provision is made in the statute for the protection of the bank in case of claims made, notwithstanding the deposit agreement, and specific provision is made for notification of the bank of such claims. It is true that in some jurisdictions, the parol evidence rule has been held to apply in an action commenced after the death of one of the parties to determine the ownership of the deposit. See 10 Am.Jur.2d Banks § 389. We would point out, however, that in the

case at bar, neither of the parties had died at the time the case was commenced. Even in cases where one of the parties has died, there are jurisdictions which hold the parol evidence rule is inapplicable in the determination of the ownership of a joint deposit, notwithstanding both the depositor and the co-depositor signed the signature care or agreement. See the last sentence in § 389, above cited.

In view of the obvious need for banks to be protected in their handling of joint accounts, and in view of the fact that depositors have little choice in the language used by the bank in the contract they are required to sign, it seems most unrealistic to take the position that the contract signed by the depositors with the bank is to be construed as the only and absolute agreement between the depositors. Any attorney who has practiced probate law and has been involved in the payment of state and federal taxes on joint accounts certainly is aware of a wide variety of agreements between joint depositors that vary considerably with the signed agreements with the deposit bank. I would follow the authorities which hold that parol evidence should be admitted to show the depositor, by signing a deposit memorandum on a joint account did not intend an immediately effective gift, but merely an arrangement for the convenience of the depositor. See *Murray v. Gadsden*, 91 App.D.C. 38, 197 F.2d 194, 33 A.L.R.2d 554; *Link v. Link*, (1949) 3 N.J.Super. 295, 65 A.2d 89; *In re Fischer*, (1944) 183 Misc. 792, 50 N.Y.S.2d 894.

The trial court properly admitted parol evidence to determine the intent of the donor.

The trial judge made the following finding with regard to Maude's intent when she established the account:

"5. All of said monies was deposited from the monies of Maude A. Hires and none of the said amount came from the money of Marie Van Blaircum [*sic*] and evidence and testimony shows that Maude A. Hires did not intend during her lifetime to relinquish ownership or control of said monies, nor was there any intention of a delivery or a gift to Marie Van Blaircom during the lifetime of Maude A. Hires." (Transcript p. 92)

The record supports this finding and neither this Court nor the Court of Appeals should usurp the function of the trier of fact.

Maude gave the money to Marie for deposit in an account established by a third-party beneficiary contract. The contingency, Maude's death, is the only event that could give Marie any color of title to the money on deposit. Maude was alive when the trial court entered its judgment and thus the contingency was still contingent. The trial court was correct in awarding the entire amount to Maude's guardian.

The decision of the Court of Appeals should be vacated and the trial court should be affirmed.

HUNTER, J., concurs in dissent.

PIVARNIK, J., not participating.