**PICADILLY, INC., Appellant**
**(Defendant Below),**

v.

**Charles H. COLVIN, Appellee**
**(Plaintiff Below).**

No. 32S01–8803–CV–287.

Supreme Court of Indiana.

March 2, 1988.

James R. Fisher, Robert B. Clemens, Michael J. Lewinski, Ice Miller Donadio & Ryan, Indianapolis, for appellant.

Frank E. Spencer, W.F. Conour, Office of William F. Conour, Indianapolis, for appellee.

Indiana Trial Lawyers Ass'n by P. Gregory Cross and Steven C. Brown, Cross, Marshall, Schuck, Deweese, Cross & Feick, P.C., Muncie, for amicus curiae.

ON CIVIL PETITION TO TRANSFER

DICKSON, Justice.

ment of $75,000.00 in compensatory damages and $150,000.00 in punitive damages against defendant-appellee Picadilly, Inc. (Picadilly). The Court of Appeals reversed and remanded with instructions to enter judgment for Picadilly, finding that there was no common law cause of action for dram shop liability in Indiana, and that the evidence was insufficient to prove Picadilly's knowledge of its customer's intoxication. *Picadilly, Inc. v. Colvin* (1987), Ind.App., 503 N.E.2d 421. We disagree and grant transfer accordingly.

The Court of Appeals provided the following summary of facts. Deborah Brewer along with Joyce Carrico joined a group of six other women sometime between 7:30 and 9:30 p.m. at Picadilly. Picadilly is a bar licensed to sell beer, wine, and liquor. It is located in a building which formerly housed a department store and covers in excess of 40,000 square feet. The method used in selling alcoholic beverages to the patrons is similar to checkout counters at a supermarket. There are eight lanes for customer use. Each lane begins with a cashier where the drinks are ordered and paid for. The drink order is conveyed by computer to a bartender who prepares the drinks. The drinks are then given to a passer who places the completed order on a counter for the customer to pick up. Brewer drove Carrico home at about 1:30 a.m. and started toward her own home in Hope, Indiana. Brewer became lost and entered an interstate highway going in the wrong direction. She collided with Colvin at about 3:30 a.m. Two separate blood tests were taken after 6:00 a.m. which showed Brewer's blood alcohol content to be .114 and .1205. Colvin filed suit against Brewer and Picadilly with a settlement being reached with Brewer prior to trial.

We will regroup and discuss the issues presented by Picadilly on appeal as follows:

1. refusal of instructions limiting dram shop liability to statutory violation;

2. sufficiency of evidence of Picadilly's knowledge of customer's intoxication;

3. punitive damages.

### 1. Dram Shop Liability

Picadilly's tendered instructions no. 7, 8, 9, and 10 each related to its contention that absent a violation of the statute prohibiting the furnishing of alcoholic beverages to intoxicated persons, there could be no independent common law liability for injuries caused by a customer's intoxication. The trial court refused the instructions, observing that Picadilly's contention was an incorrect statement of law.

■ In considering whether any error results from refusal of the tendered instruction, the reviewing court considers: 1) whether the tendered instruction correctly states the law, 2) whether there is evidence in the record to support the giving of the instruction, and 3) whether the substance of the instruction is covered by other instructions which are given. *Dahlberg v. Ogle* (1978), 268 Ind. 30, 373 N.E.2d 159. Failure of a tendered instruction to meet any one of these criteria will support its refusal by the trial court.

The general common law duty of persons selling alcoholic beverages to exercise due care was recognized in *Elder v. Fisher* (1966), 247 Ind. 598, 217 N.E.2d 847. In *Elder*, plaintiff brought a damage action for personal injuries from a collision allegedly caused by an intoxicated 17–year-old who purchased liquor from the defendant. Two questions were identified and discussed: (1) whether violation of the statute prohibiting sale of alcohol to underage persons would constitute negligence per se, and (2) whether, even without such statute, there could be a common law cause of action for negligence based upon the sale of intoxicating liquor. Discussing each question independently, *Elder* expressly answered each in the affirmative. The common law liability applies when a negligent act or omission is a proximate cause of an injury, which injury "need be only a natural and probable result thereof; and the consequence be one which in the light of circumstances should reasonably have been foreseen or anticipated." *Elder*, 247 Ind. at 605, 217 N.E.2d at 852.

Picadilly contends that the sole basis for liability should derive from violation of Ind. Code § 7.1–5–10–15:[1]

It is unlawful for a person to sell, barter, deliver, or give away an alcoholic beverage to another person who is in a state of intoxication if the person knows that the other person is intoxicated.

Violation of this criminal statute is a class B misdemeanor. Ind. Code § 7.1–5–1–8. The provision quoted above does not represent a legislative attempt to modify the common law with respect to liability of persons negligently furnishing alcoholic beverages. The statute merely designates certain specific conduct, the violation of which is punishable criminal conduct. Case law recognizes that proof of such proscribed conduct may provide evidence of negligence in a civil damage action. *Elder*, *supra*. The role of this statute in the scheme of common law dram shop liability is analogous to the relation of motor vehicle driving offense statutes to the common law duty of drivers to exercise reasonable care for the safety of others. Rather than preempting the common law, such statutes designate certain minimal duties but do not thereby relieve persons from otherwise exercising reasonable care.

■ In *Whisman v. Fawcett* (1984), Ind., 470 N.E.2d 73, 80, this Court recognized that *Elder* established "that there is a common law action against those unlawfully selling or furnishing intoxicating liquor in favor of third persons subsequently injured by the acts of the purchasers as a result of their intoxicated condition." However, *Whisman* misinterpreted *Elder* as establishing that general principles of common law negligence "apply only in the absence of a special statutory provision." *Whisman, supra*. This view was not within the holding of *Elder* and resulted from the unnecessary engrafting of the word "only" to the actual language of *Elder*:

In the absence of special statutory provision, the general principles of common-law negligence should be applied to cases involving intoxicating liquor.

*Elder*, 247 Ind. at 607, 217 N.E.2d at 853. We conclude that *Elder* did not intend to limit common law dram shop liability to the absence of statute, but rather to recognize the common law liability notwithstanding the existence of such statute.

■ Under the common law of this State, persons engaged in the business of furnishing alcoholic beverages are not granted special exemption or privilege. They are under the same duty to exercise ordinary and reasonable care in the conduct of their operations as are those involved in businesses which are not alcohol related. Such ordinary and reasonable care must be exercised for the safety of others whose injuries should reasonably have been foreseen or anticipated. The foreseeable risk of harm is indisputable. During the years 1981 to 1986, alcohol-related vehicle accidents in Indiana resulted in 53,429 persons injured and 1,554 deaths. Governor's Task Force to Reduce Drunk Driving, 1987 Progress Report 12 (summation from graphs). Indiana State Police statistics for 1986 disclosed that drinking drivers contributed to 12,263 (7.6%) of all Indiana accidents and 245 (26%) of all fatal accidents. Indiana State Police, 1986 Summary of Motor Vehicle Traffic Accidents 2.

The trial court was correct in rejecting the defendant's tendered instructions at issue. They each involved or were predicated upon the incorrect premise that common law dram shop liability did not exist apart from, or was limited to, statutory violation.

## 2. Sufficiency of Evidence of Statutory Violation

■ Picadilly argues that the trial court erred in refusing to grant its motion for judgment on the evidence because of the lack of sufficient evidence to permit the

1. The present case arises from an incident which occurred June 27, 1981, and thus does not involve the applicability of Ind. Code § 7.1–5–10–15.5, which was enacted in 1986 with the proviso that it does not apply to actions occurring before April 1, 1986. P.L. 80–1986.

Our opinion today does not attempt to review or construe the validity or applicability of the 1986 enactment. The above quoted statute is presently codified at Ind. Code § 7.1–5–10–15(a) (Supp. 1987).

jury to conclude that Picadilly's employees knowingly served alcohol to an intoxicated person in violation of statute. Colvin argues that a challenge to the sufficiency of the evidence must demonstrate inadequate evidence under every theory of liability, not merely one of many, before prejudice is established. We agree. A general verdict will be sustained if the evidence is sufficient to sustain any theory of liability. *In re Estate of Fanning* (1975), 263 Ind. 414, 417, 333 N.E.2d 80, 82; *City of Indianapolis v. Pollard* (1960), 241 Ind. 66, 72, 169 N.E.2d 405, 408.

Because the statutory violation was not the exclusive basis for liability, and because the sufficiency of evidence upon the alternative general negligence theory is not questioned in this appeal, we find no error on this issue.

### 3. Punitive Damages

■ With respect to punitive damages, Picadilly first contends that the judgment awarding punitive damages is improper as a matter of law, and alleges that the complaint failed to state a proper claim for the relief sought. We disagree. The case proceeded to trial on plaintiff's amended complaint which clearly notified the trial court and Picadilly of Colvin's claim for punitive damages. The amended complaint satisfied the notice pleading requirements of Trial Rule 8(A). We find no error upon this claim.

■ Picadilly next contends that the trial court erred in failing to give any instruction concerning the standard of conduct necessary for punitive damages. However, Picadilly's trial counsel failed to object to the court's instructions regarding punitive damages, and failed to tender any instruction to remedy the alleged error. A party may not claim as error the giving of an instruction unless he timely objects at trial. Trial Rule 51(C). We are not persuaded that Picadilly's previous opposition to the punitive damage claim, as represented by its motion to strike the claim, motion for mistrial, and motion for directed verdict and new trial, are sufficient to satisfy the requirement for timely objection to instruc-

tions. If proposed instructions are claimed erroneous, the trial court must be given an opportunity to correct any error or omission. We do not find this to be a matter of fundamental and plain error and conclude that any error in the punitive damage instruction has been waived by failure to present timely objection.

Picadilly further contends that punitive damages should not have been granted because the evidence was insufficient to show the element of malice by a clear and convincing standard. In *Orkin Exterminating Co., Inc. v. Traina* (1986), Ind., 486 N.E.2d 1019, 1023, this Court addressed the permissible grounds for an award of punitive damages, stating:

We concede that punitive damages may be awarded upon a showing of willful and wanton misconduct, and we have no problem with Plaintiff's conception of willfulness and wantonness as not embodying malice, ill will or intent to injure. Rather, the perverseness that public policy will permit the courts to punish is conscious and intentional misconduct which, under the existing conditions, the actor knows will probably result in injury.

As examples of such misconduct, our decision in *Traina* recognized the following: conscious indifference, heedless indifference, reckless disregard for the safety of others, reprehensible conduct, and heedless disregard of the consequences. *Id.*

Employing the rationale utilized in *Traina* for the review of an award for punitive damages, we must determine whether there was clear and convincing evidence from which the jury could find that Picadilly's conduct under the circumstances "subjected other persons to probable injury, with an awareness of such impending danger and with heedless indifference to the consequences." *Id.* Appellate Rule 15(N) provides:

A verdict, finding, judgment, order or decision shall be reversed upon appeal as not supported by or as contrary to the evidence only when clearly erroneous, and due regard shall be given to the

opportunity of the finder of fact to judge the credibility of witnesses.

The record contains evidence favorable to the judgment. The operations of Picadilly were shown to be such as to permit and encourage the unfettered simultaneous consumption of alcohol by thousands of customers, with little if any restraints or opportunity to discern customers' intoxication and curtail the serving of further alcoholic beverages when appropriate, and with heedless indifference to the consequences. Its location and volume of business compels the reasonable inference that Picadilly was aware that customers which it permitted and encouraged to become intoxicated would be departing its premises by motor vehicle, thus subjecting other motorists to impending danger and probable injury. We find the verdict and judgment within the evidence.

Picadilly's final contention, alleging improper final argument of plaintiff's counsel, must also be rejected. Picadilly's trial counsel did not move for mistrial, did not ask for an admonition, and did not object or otherwise attempt to correct, ameliorate, or preserve any alleged error in final argument. *See Dayton Walther Corp. v. Caldwell* (1980), 273 Ind. 191, 195, 402 N.E.2d 1252, 1258.

We find no error upon the claimed issues related to punitive damages.

### Conclusion

The opinion of the Court of Appeals is vacated and the judgment of the trial court is affirmed in all respects.

SHEPARD, C.J., and GIVAN, J., concur.

PIVARNIK, J., dissents with opinion in which DeBRULER, J., concurs.

PIVARNIK, Justice, dissenting.

I must respectfully dissent from the position taken by the majority regarding the legal duty of persons furnishing an alcoholic beverage to an intoxicated person. Here, the trial court refused to instruct the jury that there is no common law dram shop liability in Indiana and that liability could be imposed only if a statutory violation was found. The jury was left to decide the liability issue based on the general negligence theory of the reasonable man test. The Court of Appeals found this to be reversible error. *Picadilly Inc. v. Colvin* (1987), Ind.App., 503 N.E.2d 421. I think the Court of Appeals was correct in its opinion and I would deny transfer.

It is a basic premise of our law that general principles of common law negligence apply only in the absence of a special statutory provision. Where the legislature has established the standard of care required, the courts cannot but follow that law and cannot apply common law principles. The legislature determines what the law ought to be and has, in fact, spoken in the area that is the subject of the majority opinion. *See* Ind. Code § 7.1–5–10–15. The manufacture, use, distribution, and sale of alcoholic beverages are strictly controlled by the enactments of the legislature and enforced by various agencies of the executive branch. The statutes provide criminal penalty for such violations as driving while under the influence of alcoholic beverages, public intoxication, selling alcohol to minors, and selling or furnishing alcohol to those who are intoxicated. Historically, our statutes provided a sanction for one who sold alcohol to a known drunkard. The statute has since evolved into Ind. Code § 7.1–5–10–15, which prohibits the sale of alcoholic beverages to one who is known to be intoxicated. *See Elder v. Fisher* (1966), 247 Ind. 598, 217 N.E.2d 847. Another principle pertinent to the issue before us is that one can incur civil liability for violation of a criminal statute. This is true even though the statute does not provide for civil liability. This is a common law principle that is not limited to the subject of sale or distribution of alcoholic beverages but is applied in all areas of our tort law.

This Court faced the same question now before us in *Whisman v. Fawcett* (1984), Ind., 470 N.E.2d 73. In *Whisman*, the plaintiff's claim fell under specific statutory provisions which served as a premise

for a civil action for damages. This Court stated:

> Indiana law clearly endorses the proposition that a violation of the liquor laws will result in a civil action. *See,* e.g., *Elder,* 217 N.E.2d at 851; (further citation omitted). General principles of common law negligence apply only in the absence of a special statutory provision. *Elder,* 217 N.E.2d at 853.

*Whisman,* 470 N.E.2d at 80. *Whisman* then held that Ind. Code §§ 7.1–5–10–14 and 15 established the duty to be applied to those selling liquor to an habitual drunkard or a person in a state of intoxication at the time of sale and that therefore liability was governed by specific statutory provisions and principles of common law need not be applied. *Id.*

*Whisman* cited *Elder v. Fisher* (1966), 247 Ind. 598, 217 N.E.2d 847, which involved the sale of alcohol to a seventeen-year-old minor. Furnishing or selling alcohol to a minor was a criminal violation of the liquor laws. *Elder* established there is a common law action against those *unlawfully* selling or furnishing intoxicating liquor in favor of third persons subsequently injured by the acts of the purchasers as a result of their intoxicated condition. *Elder* then raised the question of common law liability against the vendor of alcoholic beverages, stating this issue has been "a matter of considerable confusion over the past century." *Elder,* 247 Ind. at 604, 217 N.E. 2d at 851. In reviewing the history of the subject, the Court indicated there were cases that held there is not common law liability and others which in *dicta* would imply there is. The Court then searched holdings of other jurisdictions involving sale to minors or drunks in which it was held there could be liability for resulting injury if circumstances should have warned the seller his sale would create an unreasonable risk. The Court observed, "In all of the above cited cases, reference was made to a prohibitory statute forbidding the sale of intoxicating liquor to minors or intoxicated persons." *Id.* at 605, 217 N.E. 2d at 852. The Court concluded, "In the absence of special statutory provision, the general principles of common law negli-

gence should be applied to cases involving intoxicating liquor. Accepting as true all the allegations of paragraph one of the plaintiff's complaint, there are sufficient facts stated to constitute a cause of action." *Id.* at 607, 217 N.E.2d at 853. Provisions of paragraph one alleged as negligence that the defendant sold or furnished alcoholic beverage to a seventeen-year-old minor in violation of criminal statute Ch. 226, § 31 of the Indiana General Assembly for the year 1935, as amended.

I interpret the above cited cases to hold there may be common law liability involving the sale or distribution of alcoholic beverages in an area where the legislature has not acted. However, no one has come up with a fact situation or set of circumstances where the rule might be applied. In every case, including the present one, the legislature has acted and provided for the standard to be applied to the duty of the vendor or provider in furnishing liquor to a minor or a person known to be intoxicated. I believe the law to be that stated in *Whisman,* that the legislature did speak on the subject of furnishing alcohol to one known to be intoxicated and therefore there was no common law duty left to consider. That is the holding of the Court of Appeals and therefore I would deny transfer. Since the jury was not properly instructed on the standard of care to apply to defendant, I do not reach the question of sufficiency of the evidence or the propriety of the punitive damages judgment.

DeBRULER, J., concurs.