ATTORNEYS FOR APPELLANT
Gene F. Price
Steven P. Langdon
Frost Brown Todd, LLC
New Albany, Indiana

ATTORNEY FOR APPELLEE
Terry Noffsinger
Noffsinger Law, P.C.
Evansville, Indiana

FILED
Sep 30 2010, 2:26 pm
CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 31S01-0909-CV-403

CAESARS RIVERBOAT CASINO, LLC,

*Appellant (Plaintiff below),*

v.

GENEVIEVE M. KEPHART,

*Appellee (Defendant below).*

Appeal from the Harrison Circuit Court, No. 31C01-0701-CC-005
The Honorable H. Lloyd Whitis, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 31A01-0711-CV-530

**September 30, 2010**

**Rucker, Justice.**

A casino sued a patron for unpaid counter checks. The patron, a pathological gambler, countersued for damages because the casino knowingly enticed and encouraged the patron to gamble. We granted transfer to determine if casino patrons have a common law cause of action for damages stemming from the consequences of gambling losses.

## Background

Historically, Indiana has prohibited gambling. The restrictions date back to at least 1851 when the State adopted a Constitution that contained a prohibition against lotteries thereby making various forms of gambling unlawful. Ind. Const. Art. 15 § 8 (1851); Ind. Gaming Comm'n v. Moseley, 643 N.E.2d 296, 297 (Ind. 1994). The prohibition against lotteries was adopted to "minimize the harmful effects of gambling by sheltering the people from gaming enterprises promoted and operated for monetary gain . . . ." State v. Nixon, 384 N.E.2d 152, 161 (Ind. 1979) (declaring that pari-mutuel wagering on horse races was unconstitutional). Anti-gaming statutes were passed to "remove as far as possible the temptation for gambling and prevent the evils arising therefrom." Hatton v. Casey, 178 N.E. 303, 305 (Ind. Ct. App. 1931).

In 1988, voters approved a referendum to amend the Indiana Constitution by deleting the general prohibition against lotteries. The General Assembly then authorized lotteries conducted by the State Lottery Commission and horse race gambling in 1989. See Pub. L. No. 341-1989, 1989 Ind. Acts 2308 (special session) (codified at Ind. Code 4-30, 4-31). In 1993 riverboat gambling was authorized subject to regulation by the Indiana Gaming Commission. See Pub. L. No. 277-1993 § 124, 1993 Ind. Acts 4821 (special session) (codified at I.C. 4-33). Aside from these exceptions, gambling in this state continues to be strictly prohibited by anti-gaming laws. Schrenger v. Caesars Indiana, 825 N.E.2d 879, 883 (Ind. Ct. App. 2005), trans. denied; see I.C. §§ 35-45-5-2, 35-45-5-2 (criminalizing gambling and professional gambling such as pool-selling and bookmaking); L.E. Servs., Inc. v. State Lottery Comm'n of Ind., 646 N.E.2d 334, 340 (Ind. Ct. App. 1995), trans. denied (holding the offering of out-of-state lottery tickets for sale to the public strictly prohibited by Indiana's anti-gaming laws).

## Facts and Procedural History

Caesars Riverboat Casino, LLC ("Caesars") operates a riverboat casino in Elizabeth, Indiana. Genevieve Kephart is a resident of Goodlettsville, Tennessee. Kephart has a pathological addiction to gambling. Caesars knew of Kephart's addiction. On March 18, 2006 Kephart travelled to Caesars after receiving an offer of free transportation, hotel room, food, and alcohol from Caesars. In a single night of gambling Kephart lost $125,000 through the use of six counter checks provided to her by Caesars.

The counter checks were returned to Caesars for insufficient funds. Caesars filed suit against Kephart on January 23, 2007 for payment of the checks, treble damages, and attorney fees as provided in Indiana Code section 34-24-3-1. Kephart counterclaimed on April 2, 2007 alleging that Caesars knew of Kephart's pathological addiction and took advantage of the addiction for gain. Kephart sought damages for the consequences resulting from the $125,000 loss, including damages for past, present, and future mental, emotional, and psychological injury; destroyed and/or strained relationships with family members and friends; doctor, hospital, pharmaceutical, or other medical expenses; loss of quality of life and enjoyment of life; and other expenses not yet known to her. Kephart contended Caesars owed her a common law duty to protect her from its enticements to gamble because it knew she was a pathological gambler.

Caesars moved to dismiss the counterclaim under Trial Rule 12(B)(6). After a hearing, the trial court denied the motion but certified its ruling for interlocutory appeal. The Court of Appeals accepted jurisdiction and in a divided opinion reversed the trial court's judgment. Caesars Riverboat Casino, LLC v. Kephart, 903 N.E.2d 117 (Ind. Ct. App. 2009). We granted transfer. See 919 N.E.2d 552 (Ind. Sept. 11, 2009) (Table).

## Standard of Review

We review de novo the trial court's grant or denial of a motion based on Indiana Trial Rule 12(B)(6). Babes Showclub v. Lair, 918 N.E.2d 308, 310 (Ind. 2009). Such a motion tests the legal sufficiency of a claim, not the facts supporting it. Charter One Mortgage Corp. v.

3

<u>Condra</u>, 865 N.E.2d 602, 604 (Ind. 2007). Viewing the complaint in the light most favorable to the non-moving party, we must determine whether the complaint states any facts on which the trial court could have granted relief. <u>Id.</u> at 604-05.

**Discussion**

**I.**

To prevail on a claim of negligence the plaintiff must show 1) duty owed to the plaintiff by defendant, 2) breach of duty by allowing conduct to fall below the applicable standard of care, and 3) compensable injury proximately caused by defendant's breach of duty. <u>Kroger Co. v. Plonski</u>, 930 N.E.2d 1, 6 (Ind. 2010). Absent a duty there can be no negligence or liability based upon the breach. <u>Id.</u>

Where, as here, the existence of a duty has not been previously articulated, the three-part balancing test this court developed in <u>Webb v. Jarvis</u>, 575 N.E.2d 992, 995 (Ind. 1991) (relationship between the parties, foreseeability, and public policy) can be a useful tool in determining whether a duty exists. We say "can be" because in this case the tool has not proven to be of much assistance. Both the Court of Appeals majority as well as the dissent applied the <u>Webb</u> factors. And despite well-reasoned and thoughtful analysis on both sides, each reached an opposite result. Speaking for the majority, Judge Mathias concluded "[t]here is no common law duty obligating a casino operator to refrain from attempting to entice or contact gamblers that it knows or should know are compulsive gamblers." <u>Kephart</u>, 903 N.E.2d at 128. In dissent Judge Crone concluded, "all three [<u>Webb</u>] factors militate in favor of imposing a duty on Caesars to refrain from enticing to its casino known pathological gamblers who have not requested that they be removed from the casino's direct marketing list or excluded from the casino." <u>Id.</u> at 134 (Crone, J., dissenting).

We think it unnecessary to resolve this dispute today. Assuming without deciding that casino operators in this State might otherwise have a common law duty to refrain from attempting to entice or contact gamblers that it knows or should know are compulsive gamblers, we are of the view that the Legislature has abrogated the common law.

4

There is a presumption that the legislature does not intend to make any change in the common law beyond those declared in either express terms or by unmistakable implication. South Bend Cmty. Schs. Corp. v. Widawski, 622 N.E.2d 160, 162 (Ind. 1993). "An abrogation of the common law will be implied (1) where a statute is enacted which undertakes to cover the entire subject treated and was clearly designed as a substitute for the common law; or, (2) where the two laws are so repugnant that both in reason may not stand." Irvine v. Rare Feline Breeding Ctr., Inc., 685 N.E.2d 120, 123 (Ind. Ct. App. 1997), trans. denied.

When the General Assembly legalized riverboat gambling in 1993, it expressed its intent as follows:

> This article is intended to benefit the people of Indiana by promoting tourism and assisting economic development. The public's confidence and trust will be maintained only through:
>
> (1)     comprehensive law enforcement supervision; and
>
> (2)     the strict regulation of facilities, persons, associations, and gambling operations under this article.

I.C. § 4-33-1-2. The Legislature established the Indiana Gaming Commission ("Commission") as the administrative agency responsible for administration, regulation and enforcement of the riverboat gaming system. See generally I.C. § 4-33-4-1. Under this statute the Commission has jurisdiction and supervision over "[a]ll persons on riverboats where gambling operations are conducted" and enjoys "[a]ll powers necessary and proper to fully and effectively execute" the statute. I.C. § 4-33-4-1(3)(B), (2). Those powers include the right to "[t]ake appropriate administrative enforcement or disciplinary action against a licensee or an operating agent." I. C. § 4-33-4-1(6). Moreover, the Commission has broad powers to "[t]ake any reasonable or appropriate action to enforce [the statue]," including the power to "[r]evoke, suspend, or renew licenses issued under [the statute]." I.C. § 4-33-4-1(16), (14). The Commission's authority also includes investigating violations, conducting hearings, adopting rules, levying and collecting penalties for noncriminal violations, and adopting a voluntary exclusion program for gamblers. I.C. §§ 4-33-4-1, 4-33-4-3. Thus it seems apparent Indiana Code 4-33 covers the entire subject of riverboat gambling. Accord Atlantic City Showboat, Inc. v. Dep't of Cmty. Affairs of State, 751 A.2d 111, 118 (N.J. Super. App. Div. 2000) (noting New Jersey's Casino Control Act is

5

"extraordinarily pervasive and intensive" and recognizing the Act preempts well-settled areas of law (citing <u>Hakimoglu v. Trump Taj Mahal Assocs.</u>, 70 F.3d 291, 293-94 (3rd Cir. 1995) (holding common law dram shop liability does not apply to casinos))).

In this case, not only does the statutory scheme cover the entire subject of riverboat gambling, but the statutory scheme and Kephart's common law claim are so incompatible that they cannot both occupy the same space. As the sole regulator of riverboat gambling, the Commission has adopted detailed regulations at the legislature's direction. <u>See</u> 68 Ind. Admin. Code §§ 1-1-1 to 19-1-5. Indiana Code sections 4-33-4-3(a)(9) and (c) require the Commission to enact a voluntary exclusion program. <u>See</u> 68 I.A.C. §§ 6-1-1 to 6-3-5. Under this program any person may make a request to have his or her name placed on a voluntary exclusion list by following the required procedures. 68 I.A.C. § 6-3-2. To request exclusion, applicants must provide contact information, a physical description, and desired time frame of exclusion – one year, five years, or lifetime. <u>Id.</u> Casinos must have procedures by which excluded individuals are not allowed to gamble, do not receive direct marketing, and are not extended check cashing or credit privileges. 68 I.A.C. § 6-3-4. A casino's failure to comply with the regulations makes it subject to disciplinary action under 68 Indiana Administrative Code article 13.

Kephart's common law claim would hold Caesars to a similar standard regarding known pathological gamblers in absence of the voluntary exclusion program. The existence of the voluntary exclusion program suggests the legislature intended pathological gamblers to take personal responsibility to prevent and protect themselves against compulsive gambling. The legislature did not require casinos to identify and refuse service to pathological gamblers who did not self-identify. Kephart's claim directly conflicts with the legislature's choice. To allow Kephart's claim to go forward under the common law would shift primary responsibility from the gambler to casino. It is apparent that the legislature intended otherwise. Therefore allowing a common law negligence claim addressing behavior essentially the same as prohibited under the statutory scheme irreconcilably conflicts with the intent of the legislature.

In sum it appears to us that by unmistakable implication the Legislature has abrogated any common law claim that casino patrons might otherwise have against casinos for damages

resulting from enticing patrons to gamble and lose money at casino establishments. The trial court thus erred in denying Caesars' motion to dismiss Kephart's counterclaim under Trial Rule 12(B)(6) for failure to state a claim upon which relief can be granted.

## II.

In addition to her counter claim, Kephart also raised a number of affirmative defenses.[1] An affirmative defense is a defense "upon which the proponent bears the burden of proof and which, in effect, admits the essential allegations of the complaint but asserts additional matter barring relief." Rice v. Grant County Bd. of Comm'rs, 472 N.E.2d 213, 214 (Ind. Ct. App. 1984) (emphasis omitted), trans. denied. Indiana Trial Rule 8(C) provides in relevant part, "A responsive pleading shall set forth affirmatively and carry the burden of proving: [list of defenses] and any other matter constituting an avoidance, matter of abatement, or affirmative defense." The list of affirmative defenses contained in the Rule is not exhaustive. Willis v. Westerfield, 839 N.E.2d 1179, 1185 (Ind. 2006). Instead, whether a defense is affirmative, "depends upon whether it controverts an element of a plaintiff's prima facie case or raises matters outside the scope of the prima facie case." Id. (internal citations and quotation omitted).

Although Kephart does not have a common law cause of action against Caesars for damages stemming from the consequences of her gambling losses, nothing in this opinion

---

[1] Specifically Kephart alleges, "1. There was a lack of consideration for the checks or money claimed by Plaintiff for goods, wares, and/or services. 2. The Defendant, Mrs. Kephart, was incompetent at the time of the execution of the written instruments which are alleged in Plaintiff's complaint. 3. Any alleged contract with the Casino should be rescinded upon the following grounds: a. Breach of its implied covenant of good faith and fair dealing; b. Mrs. Kephart's capacity to contract was impaired by intoxication; c. Any checks or markers signed by Mrs. Kephart were void because they were signed under duress; d. The enforcement of any such alleged contract would be unconscionable[.] 4. By giving excessive amounts of alcohol to Mrs. Kephart, and then claiming it was injured by her actions or inactions, Caesars has waived any claim it might have for damages, pursuant to Ind. Code § 7.1-5-10-15.5(b) (1996). 5. Caesars failed to comply with Ind. Code § 34-16-1-1 (1998), which provides that any security made in consideration of money won as the result of a wager is void. 6. Caesars failed to comply with Ind. Code § 34-16-1-2 (1998), which requires that any civil action to recover any money by betting on a game be filed within one hundred eighty (180) days. 7. The prosecution of this lawsuit contravenes the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692e. 8. The Complaint fails to state a claim upon which relief can be granted." Appellant's App. at 68-69.

7

precludes Kephart from controverting any element of Caesars' prima facie case or from raising matters outside the scope of Caesars' prima facie case.

## Conclusion

We reverse the judgment of the trial court.

Shepard, C.J., and Sullivan, J., concur.
Boehm, J., concurs in result with separate opinion.
Dickson, J., dissents with separate opinion.

**Boehm, J., concurring in result.**

I concur in the majority opinion with a single exception. The majority allows that the Webb v. Jarvis three factor framework may be a useful tool to analyze whether a duty exists or not. This case is, in my view, a good example of how the Webb framework generates more confusion than light, and I am pleased that the Court recognizes that Webb analysis is not always useful. But I do not share the view that it is ever helpful. As I see it, asserting the defendant has a duty to the plaintiff is nothing more than a statement that there is no legal bar to recovery on the plaintiff's claim. The majority's analysis here, which I join, is that in this case there is a reason why the plaintiff may not recover, namely, that recovery is inconsistent with a comprehensive legal scheme designed to regulate the defendant's industry.

My specific complaint about Webb is that it identifies "foreseeability" as one of the three factors the courts are to evaluate in deciding whether the defendant has a duty to the plaintiff. But whether the plaintiff's injury was reasonably foreseeable by the defendant under the facts of the case is ordinarily a component of breach because the ultimate test of negligence is typically whether the defendant acted reasonably under all the circumstances. Moreover, foreseeability of injury arising from a defendant's act or omission is also relevant to the scope of liability the law will impose on the defendant. This component of ordinary tort liability is usually lumped together with causation-in-fact under the rubric of proximate cause. I have tried to spell out some of the pernicious consequences of this confusion in Theodore R. Boehm, A Tangled Webb—Reexamining the Role of Duty in Indiana Negligence Law, 37 Ind. L. Rev. 1 (2003).

I have been hoping for a case that would permit me to address this issue in a mode that would attract the attention of at least two of my colleagues, but must be content with leaving them with this small soupcon of the delights that await them in untangling this Webb.

1

**Dickson, Justice, dissenting.**

In my view, the result in this case is particularly disturbing. The Court today holds that a gambling casino may with impunity entice a person the casino knows to be a pathological gambler by offering free transportation from Tennessee to the Indiana casino, providing her with a free hotel room, food, and alcohol, and then extending her credit to gamble at the casino where she not surprisingly suffers $125,000 in casino gambling losses. These facts call for application of the well-established principle of Indiana common law that business owners must use reasonable care to protect their customers while on the business premises. Burrell v. Meads, 569 N.E.2d 637, 639 (Ind. 1991).

The rationale applied by the Court is that this common law obligation, as applied to casinos, was abrogated by implication because the Indiana Gaming Commission, pursuant to statutory directive, created a program whereby persons may voluntarily place their name on an exclusion list that would prevent their being permitted to gamble, to receive direct marketing, or to receive casino credit privileges. I disagree with this implied abrogation. "It is a well-known principle in Indiana that statutes 'in derogation of the common law [] are to be strictly construed against limitations on a claimant's right to bring suit.'" Wine-Settergren v. Lamey, 716 N.E.2d 381, 388 (Ind. 1999) (quoting Collier v. Prater, 544 N.E.2d 497, 498 (Ind. 1989)).

> This rule has special force when the statute affects a common law right or duty. When the legislature enacts a statute in derogation of the common law, the Court presumes that the legislature is aware of the common law, and does not intend to make any change therein beyond what it declares either in express terms or by unmistakable implication. In cases of doubt, a statute is construed as not changing the common law.

Bartrom v. Adjustment Bureau, Inc., 618 N.E.2d 1, 10 (Ind. 1993) (internal citations omitted). Nowhere in Indiana's statutory system of gambling regulation is there any provision that expressly or unmistakably abrogates Indiana's common law requiring business operators to exercise reasonable care for the safety of their customers and subjecting them to accountability in damages for failing to do so.[1]

---

[1] I also dissent today in Donovan v. Grand Victoria Casino & Resort, L.P., ___ N.E.2d ___ (Ind. 2010), urging that the comprehensive regulatory scheme controls and fails to authorize casinos to exclude patrons with card counting skills. In contrast to my dissenting views above, which emphasize the viability of a person's right to assert a common law cause of action unless expressly abrogated by statute, my dissent in Donovan is grounded on the fact that Indiana's casino gambling businesses exist only by statute

The plaintiff's failure to avail herself of the Gaming Commission's voluntary program may be appropriately considered in the allocation of comparative fault between the plaintiff and the casino, but it should not prematurely preclude the plaintiff from having her day in court to seek to hold the casino accountable in damages for what appears from the allegations to be a blatant breach of duty.

This Court has often provided protection for vulnerable individuals against the unreasonable actions of others. *See, e.g.,* Livingston v. Fast Cash USA, Inc., 753 N.E.2d 572 (Ind. 2001) (holding that payday loan lenders cannot collect finance charges exceeding the statutory maximum annual percentage rate and mentioning the criminality of loansharking); Picadilly, Inc. v. Colvin, 519 N.E.2d 1217 (Ind. 1988) (holding that the common law duty to exercise reasonable care still exists for alcohol providers despite the enactment of dram shop statutes); Scott County Sch. Dist. One v. Asher, 263 Ind. 47, 324 N.E.2d 496 (1975) (recognizing the ability of minors to avoid or disaffirm contracts entered into, with the exception of contracts for necessaries). Similarly, today's case calls for upholding our common law principles rather than implying statutory repeal thereof. I therefore dissent.

Separately, I commend Justice Boehm's separate concurrence, which thoughtfully questions the Webb v. Jarvis three-factor framework and urges that we revisit our traditional but redundant application of foreseeability to analyze both duty and proximate cause, and I encourage a careful consideration of his law journal article and its recommendations.

---

and regulation and thus are governed exclusively by Indiana Gaming Commission regulation and not by common law.