



FILED

Feb 12 2024, 1:16 pm

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

I N T H E

# Indiana Supreme Court

Supreme Court Case No. 23S-CT-184

## WEOC, Inc. d/b/a Wings, Etc. and Romo, LLC d/b/a El Cantarito,

*Appellants*

–v–

## Leah Niebauer, Special Representative of the Estate of Nathan Blount, Deceased,

*Appellee*

---

Argued: September 27, 2023 | Decided: February 12, 2024

Interlocutory Appeal from the LaPorte Superior Court
No. 46D02-2107-CT-1342
The Honorable Richard R. Stalbrink, Jr., Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 22A-CT-1869

---

**Opinion by Chief Justice Rush**

Justices Massa, Slaughter, Goff, and Molter concur.

**Rush, Chief Justice.**

A "dram shop" is a bar, tavern, or store that sells alcohol. This antiquated term comes from the historical practice of selling alcohol by the dram—an eighteenth-century British unit measuring three fourths of a teaspoon. Though "dram shop" may be an unfamiliar term to many today, it survives in the legal field. For over a century, Indiana's dram shops have faced criminal liability for various conduct. And for nearly sixty years, they have faced civil liability under principles of common-law negligence for providing alcohol to intoxicated individuals who later cause injury. But in 1986, the Legislature passed the Dram Shop Act, which limited civil liability to those with actual knowledge of the injury-causing person's visible intoxication. This case presents an issue of first impression: the Dram Shop Act's impact on common-law liability against entities that serve alcohol.

Here, an intoxicated driver crashed his car into another vehicle, killing its driver. The deceased's estate sued two restaurants that had served the intoxicated driver and included a negligence claim. The restaurants moved to dismiss only that claim, arguing that the Dram Shop Act eliminated any independent common-law liability, and thus the claim failed as a matter of law. The trial court denied the motion.

We affirm. The Dram Shop Act modified but did not eliminate common-law liability against entities that furnish alcohol. And at this early stage of the proceedings, we hold that the estate's negligence claim satisfies the Dram Shop Act's requirements and alleges facts capable of supporting relief.

## Facts and Procedural History

Nathan Blount suffered fatal injuries when an intoxicated driver, Eric Adair, crossed the center line and crashed his car into Blount's vehicle. Before the accident, Adair was served alcohol at both Wings, Etc. Grill & Pub and El Cantarito.

Leah Niebauer, as special representative of Blount's estate ("Estate"), filed a wrongful death complaint that included two counts against the restaurants' respective owners: WEOC, Inc. and Romo, LLC (collectively, "Restaurants"). In Count II, the Estate alleged the Restaurants "knew or should have known" that Adair was "visibly intoxicated at the time" they served him alcohol, in violation of Indiana Code section 7.1-5-10-15. And in Count III, the Estate incorporated those assertions and brought a negligence claim. The Estate alleged the Restaurants were negligent by (1) failing "to exercise reasonable care under the circumstances when they furnished alcoholic beverages" to Adair, (2) allowing him to drive away from their premises when they "knew or should have known" that he was intoxicated, (3) failing "to notify law enforcement" that he drove away intoxicated, and (4) failing to obtain "alternative transportation" for him.

The Restaurants moved to dismiss only Count III under Indiana Trial Rule 12(B)(6), asserting that the Estate seeks recovery on common-law "theories that aren't recognized under Indiana law." The Restaurants argued that the Dram Shop Act, codified at Indiana Code section 7.1-5-10-15.5, is the only path to civil liability for furnishing alcoholic beverages to someone who later causes injury. After a hearing, the trial court denied the motion and certified the order for interlocutory appeal. The Court of Appeals accepted jurisdiction and affirmed the trial court. *WEOC, Inc. v. Niebauer*, 206 N.E.3d 411, 413–14 (Ind. Ct. App. 2023).

The Restaurants petitioned for transfer, which we granted, vacating the Court of Appeals' opinion. Ind. Appellate Rule 58(A).[1]

## Standard of Review

We review a trial court's decision on a Trial Rule 12(B)(6) motion de novo. *Residences at Ivy Quad Unit Owners Ass'n v. Ivy Quad Dev., LLC*, 179

---

[1] We held oral argument in Steuben County at Trine University. We thank the university for its outstanding hospitality, the parties for their travel and excellent advocacy, and the students and other guests for their courtesy and insightful questions following the argument.

N.E.3d 977, 981 (Ind. 2022). We accept the facts alleged in the complaint as true and view all inferences in the light most favorable to the nonmoving party. *Id.* Dismissal under Rule 12(B)(6) is "rarely appropriate." *State v. Am. Fam. Voices, Inc.*, 898 N.E.2d 293, 296 (Ind. 2008) (quotations omitted). Indeed, dismissal is appropriate only when "it appears to a certainty on the face of the complaint that the complaining party is not entitled to any relief." *Id.*

## Discussion and Decision

The Restaurants argue that the Estate's negligence claim in Count III must be dismissed because the Dram Shop Act eliminated common-law liability against businesses that furnish alcoholic beverages to someone who later causes injury. Alternatively, the Restaurants contend that Count III must be dismissed because Indiana law does not recognize the "duties" alleged by the Estate. We reject both arguments at this stage.

A historical review of dram-shop regulation in Indiana is instructive to determine the Dram Shop Act's impact on common-law liability against entities that provide alcohol. And we conclude the statute modified, but did not eliminate, common-law liability. In reaching this conclusion, we review the Dram Shop Act and find it did not abrogate the common law in either express terms or by unmistakable implication. Rather, the statute provides additional requirements—actual knowledge of visible intoxication and specific proximate causation—to establish liability in any civil action. We then hold that the Estate's negligence claim in Count III satisfies these requirements and alleges facts capable of supporting relief. As a result, the trial court properly denied the Restaurants' motion to dismiss.

# I. The history of Indiana's dram-shop regulation guides our determination of the Dram Shop Act's effect on common-law liability.

In the late nineteenth century, the Legislature enacted several statutes to protect Hoosiers "against evils resulting from any sale" of "intoxicating liquors." 1872–1873 Ind. Acts 151, 151–58; *see also* William Hurst, *The Dram Shop: Closing Pandora's Box*, 22 Ind. L. Rev. 487, 488 (1989). One early statute made it a misdemeanor to "sell, barter, or give away" alcohol "to any person at the time in a state of intoxication." 1875 Ind. Acts 55, 58. This criminal prohibition, now codified in Indiana Code section 7.1-5-10-15, makes it a Class B misdemeanor for a person to knowingly provide an intoxicated person with alcohol. Ind. Code § 7.1-5-10-15(a). Additionally, since the 1960s, entities have faced civil liability for serving alcohol to individuals who cause injury under "general principles of common-law negligence." *Elder v. Fisher*, 217 N.E.2d 847, 853 (Ind. 1966).

As a result, Indiana's dram shops traditionally could be liable for negligently serving alcohol to an intoxicated person who later causes injury in two ways: (1) through negligence-per-se claims for violating the criminal statute; and (2) through traditional negligence claims for failing to exercise reasonable care. But *Elder*'s recognition that common-law principles apply "[i]n the absence of special statutory provision" created confusion about whether common-law liability existed apart from, or was limited to, statutory violation. *Id.*

And so, in the late 1980s, this Court ended that confusion by clarifying *Elder* and holding that the criminal statute did not preempt the common law. *Picadilly, Inc. v. Colvin*, 519 N.E.2d 1217, 1219–20 (Ind. 1988); *Gariup Constr. Co. v. Foster*, 519 N.E.2d 1224, 1227 (Ind. 1988). *Picadilly* explained that *Elder* "did not intend to limit common law dram shop liability to the absence of statute, but rather to recognize the common law liability notwithstanding the existence of such statute." *Picadilly*, 519 N.E.2d at 1220. *Gariup* likewise recognized that the criminal statute did "not preclude the possibility of independent common law liability."519 N.E.2d at 1227. Rather, the criminal statute simply designated "certain minimal

duties" that did not "relieve persons from otherwise exercising reasonable care." *Id.* And so, litigants could seek recovery against dram shops under both a negligence-per-se theory and a traditional negligence theory.

Around this same time, in 1986, our Legislature enacted another statute—the Dram Shop Act—that was not applicable in *Picadilly* and *Gariup*. That statute provides in relevant part:

> (a) As used in this section, "furnish" includes barter, deliver, sell, exchange, provide, or give away.
>
> (b) A person who furnishes an alcoholic beverage to a person is not liable in a civil action for damages caused by the impairment or intoxication of the person who was furnished the alcoholic beverage unless:
>
>> (1) the person furnishing the alcoholic beverage had actual knowledge that the person to whom the alcoholic beverage was furnished was visibly intoxicated at the time the alcoholic beverage was furnished; and
>>
>> (2) the intoxication of the person to whom the alcoholic beverage was furnished was a proximate cause of the death, injury, or damage alleged in the complaint.

I.C. § 7.1-5-10-15.5.[2]

Since its enactment, this Court has not considered the Dram Shop Act's impact on the common law. But other courts have. Our Court of Appeals is split on whether the Dram Shop Act precludes independent common-

---

[2] We acknowledge that our Court of Appeals has at times referred to the Dram Shop Act as either Section 7.1-5-10-15, *see, e.g.*, *Nat'l R.R. Passenger Corp. v. Everton by Everton*, 655 N.E.2d 360, 364 (Ind. Ct. App. 1995), *trans. denied*, or as both Sections 7.1-5-10-15 and 7.1-5-10-15.5, *see, e.g.*, *Vanderhoek v. Willy*, 728 N.E.2d 213, 215–16 (Ind. Ct. App. 2000). But we have consistently used this term only in reference to Section 7.1-5-10-15.5. *Ebert v. Ill. Cas. Co.*, 188 N.E.3d 858, 862 (Ind. 2022); *Rogers v. Martin*, 63 N.E.3d 316, 327 (Ind. 2016); *Outback Steakhouse of Fla., Inc., v. Markley*, 856 N.E.2d 65, 74 (Ind. 2006); *Delta Tau Delta v. Johnson*, 712 N.E.2d 968, 974 (Ind. 1999). To promote clarity going forward, Section 7.1-5-10-15.5 is Indiana's Dram Shop Act.

law liability against those furnishing alcohol. *Compare Rauck v. Hawn*, 564 N.E.2d 334, 337 (Ind. Ct. App. 1990) (concluding "liability for negligence in the provision of alcoholic beverages is restricted to cases involving the breach of a statutory duty"), *Baxter v. Galligher*, 604 N.E.2d 1245, 1248 (Ind. Ct. App. 1992) (same), *Thompson v. Ferdinand Sesquicentennial Comm. Inc.*, 637 N.E.2d 178, 180 (Ind. Ct. App. 1994) (same), *and Vanderhoek v. Willy*, 728 N.E.2d 213, 216 n.1 (Ind. Ct. App. 2000) (same), *with Est. of Cummings by Heck v. PPG Indus., Inc.*, 651 N.E.2d 305, 309 n.8 (Ind. Ct. App. 1995) (concluding litigants can bring a "common law negligence claim despite Indiana's Dram Shop Act"), *trans. denied*, *and Weida v. Dowden*, 664 N.E.2d 742, 750 (Ind. Ct. App. 1996) (same), *trans. denied*. However, both of Indiana's federal district courts have found that the Dram Shop Act does not "preclude common law liability." *Buffington v. Metcalf*, 883 F. Supp. 1190, 1194 (S.D. Ind. 1994); *see also Kludt v. Majestic Star Casino, LLC*, 200 F. Supp. 2d 973, 981 n.6 (N.D. Ind. 2001).

With this historical context in hand, we now determine the Dram Shop Act's effect on the common law.

## II. The Dram Shop Act modified but did not eliminate common-law liability for furnishing alcohol to an intoxicated person who later causes injury.

We first conclude the Dram Shop Act did not eliminate common-law liability against entities that furnish alcohol. In reaching this conclusion, we review the statute's text and find nothing in either its express terms or by unmistakable implication that reveals it was intended to preempt the common law. But we then recognize and explain how the Dram Shop Act modified the common law by imposing additional requirements to establish liability.

## A. The Dram Shop Act neither explicitly nor implicitly abrogated common-law liability.

Our Legislature has the authority to enact statutes that eliminate common-law rights and remedies. *See, e.g.*, *State v. Rendleman*, 603 N.E.2d 1333, 1336 (Ind. 1992). But we presume it did not intend to do so unless a statute declares otherwise "in either express terms or by unmistakable implication." *Caesars Riverboat Casino, LLC v. Kephart*, 934 N.E.2d 1120, 1123 (Ind. 2010). Abrogation by unmistakable implication occurs only if the statute was either "clearly designed as a substitute for the common law" or is so comprehensive that it and the common law cannot exist simultaneously. *Gunderson v. State*, 90 N.E.3d 1171, 1182 (Ind. 2018) (quotation omitted).

To determine whether the Dram Shop Act abrogated the common law, we first consider whether the statute is clear and unambiguous. *KS&E Sports v. Runnels*, 72 N.E.3d 892, 898–99 (Ind. 2017). If so, we interpret the statute "consistent with its plain meaning, by giving effect to" both what it says and does not say. *Id.* at 907.

The Dram Shop Act is unambiguous, and its plain language does not preempt the common law in express terms. Under the statute, any "person who furnishes an alcoholic beverage" to someone who causes injury is "not liable in a civil action for damages" unless (1) the person had "actual knowledge" of the injury-causing individual's visible intoxication, and (2) that individual's intoxication "was a proximate cause of the death, injury, or damage." I.C. § 7.1-5-10-15.5(b). The Dram Shop Act does not mention common-law rights. And it neither identifies elements of an independent statutory cause of action nor criminalizes conduct. We thus disapprove of cases stating otherwise. *Rauck*, 564 N.E.2d at 337; *Baxter*, 604 N.E.2d at 1248; *Thompson*, 637 N.E.2d at 180; *Vanderhoek*, 728 N.E.2d at 216 n.1. Also, unlike other statutes, the Dram Shop Act does not include language establishing it as an exclusive remedy or means of recovery. *Cf.* I.C. § 22-3-2-6 (stating that the Worker's Compensation Act "shall exclude all other rights and remedies . . . at common law or otherwise"); I.C. § 34-20-1-1 (stating that the Product Liability Act "governs all actions . . . regardless of

the substantive legal theory or theories upon which the action is brought").

Likewise, the plain language of the Dram Shop Act does not unmistakably imply an intent to abrogate the common law. Nothing suggests the statute was designed to replace the common law or the statute is so comprehensive that it and the common law cannot exist simultaneously. Indeed, the statute explicitly refers to "a civil action for damages" and merely provides the conditions under which a person who furnishes alcohol cannot be liable in such an action. *Cf. Caesars Riverboat Casino*, 934 N.E.2d at 1123–24 (holding that statutes regulating riverboat gambling abrogated the common law because the "statutory scheme" covered "the entire subject of riverboat gambling" and was "so incompatible" with the plaintiff's common-law claim that both could not "occupy the same space"). In this way, the Dram Shop Act presumes the existence of independent common-law liability, subject to the statute's requirements.

In sum, the Dram Shop Act does not expressly or by unmistakable implication eliminate common-law liability against entities that furnish alcohol. And thus, a plaintiff is not precluded from bringing a negligence claim premised on a business's common-law duty to exercise ordinary and reasonable care when providing alcoholic beverages. But the Dram Shop Act impacted these claims by limiting the scope of liability.

### B. The Dram Shop Act added requirements to common-law claims seeking damages against those who furnish alcohol.

As noted above, providers of alcohol historically faced civil liability through traditional negligence claims and negligence-per-se claims. A traditional negligence claim consists of (1) a duty, (2) a breach of that duty, (3) an injury proximately caused by the breach, and (4) damages. *See Robertson v. B.O.*, 977 N.E.2d 341, 344 (Ind. 2012). Though similar, negligence-per-se claims differ in that a violation of certain statutes or ordinances "serves to satisfy the breach element." *Stachowski v. Est. of*

*Radman*, 95 N.E.3d 542, 544 (Ind. Ct. App. 2018). And for both, businesses have the common-law "duty to exercise ordinary and reasonable care in the conduct of their operations . . . for the safety of others whose injuries should reasonably have been foreseen or anticipated." *Picadilly*, 519 N.E.2d at 1220.

The Dram Shop Act modified these common-law claims by imposing two requirements that limit the scope of liability. First, the person furnishing alcoholic beverages must have "actual knowledge" that the individual "was visibly intoxicated." I.C. § 7.1-5-10-15.5(b)(1). And second, that individual's intoxication must be "a proximate cause of the death, injury, or damage." *Id.* § -15.5(b)(2).

Thus, common-law claims against entities that furnish alcohol must satisfy the Dram Shop Act's requirements: actual knowledge of visible intoxication and specific proximate causation. We now turn to the Estate's negligence claim in Count III and assess its legal sufficiency.

## III. The Estate alleged facts capable of supporting relief in Count III.

Recall that the Estate brought two negligence claims against the Restaurants: Count II is a negligence-per-se claim based on a violation of Indiana Code section 7.1-5-10-15; and Count III is a traditional negligence claim. Despite the similar aspects of these two counts, the Restaurants have moved to dismiss only Count III under Trial Rule 12(B)(6).

Under our notice-pleading rules, Count III need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Ind. Trial Rule 8(A)(1); *see also Trail v. Boys & Girls Clubs of Nw. Ind.*, 845 N.E.2d 130, 135 (Ind. 2006). The purpose of this rule "is to inform a defendant of a claim's operative facts so the defendant can prepare to meet it." *ResCare Health Servs., Inc. v. Ind. Fam. & Soc. Servs. Admin. – Off. of Medicaid Pol'y & Plan.*, 184 N.E.3d 1147, 1153 (Ind. 2022) (quotations omitted). Because Count III satisfies the Dram Shop Act's requirements and includes operative facts that are capable of supporting relief, the trial court properly denied the motion to dismiss.

Count III includes the Dram Shop Act's two requirements. For the actual-knowledge requirement, the Estate incorporated into that count the allegation that the Restaurants "both knew or should have known" Adair was "visibly intoxicated" at the time he was served alcoholic beverages. Unquestionably, if the Estate had alleged only that the Restaurants "should have known" Adair was intoxicated, dismissal would be appropriate. But by alleging that the Restaurants "knew" that Adair was "visibly intoxicated," the Estate sufficiently pleaded actual knowledge. And the Estate also satisfied the specific proximate-cause requirement. Indeed, the Estate incorporated into Count III the allegation that Adair's intoxication resulted in the car crash that "proximately caused" Blount's death.

Beyond the Dram Shop Act's requirements, the parties dispute the Estate's allegations that the Restaurants were negligent by failing "to exercise reasonable care under the circumstances" in serving alcohol to Adair, allowing him to drive away in an intoxicated state, failing to notify law enforcement about his conduct, and failing to provide him with alternative transportation. Ultimately, the interplay between Counts II and III in this case supports denying the Restaurants' motion to dismiss. As both sides acknowledged at oral argument, dismissing the allegations in Count III at this stage makes no difference because the Restaurants are not liable in either Count II or Count III without actual knowledge of Adair's visible intoxication that was the proximate cause of Blount's death. So, if the Estate prevails on Count II, Count III adds nothing to the Estate's recovery; and if it does not prevail on Count II, it cannot win on Count III either.

We also acknowledge the Restaurants' argument that Count II and Count III improperly seek "multiple recoveries for a single wrong." Though they are correct that the Estate cannot recover twice for the same wrong, the factual allegations in Count III will not necessarily lead to double recovery. For example, some may be relevant to comparative fault. And our rules explicitly permit the Estate to plead alternate theories for recovery. T.R. 8(E)(2). Further, the Restaurants do not argue that leaving Count III in the complaint at this juncture impacts the scope of discovery—their only practical concern is that permitting duplicative

claims may confuse the jury. If Count III does not support an alternative claim, or if there is some risk of double recovery, those concerns can be addressed at a later stage.

In short, Count III puts the Restaurants on notice of a factual scenario in which a legally actionable injury has occurred: an act (or acts) of common-law negligence that include the Dram Shop Act's requirements. Thus, the trial court properly denied the Restaurants' motion to dismiss.

## Conclusion

The Dram Shop Act modified but did not eliminate common-law liability for entities that furnish alcohol. And the Estate's negligence claim in Count III satisfies the Dram Shop Act's requirements and includes operative facts capable of supporting relief. We therefore affirm the trial court's denial of the Restaurants' motion to dismiss.[3]

Massa, Slaughter, Goff, and Molter, JJ. concur.

---

[3] We thank amici—Defense Trial Counsel of Indiana, Restaurant Law Center and Indiana Restaurant & Lodging Association, and the Indiana Trial Lawyers Association—for their helpful briefs.

ATTORNEYS FOR APPELLANT ROMO, LLC

Jonathan E. Halm
Kightlinger & Gray, LLP
Merrillville, Indiana

Crystal G. Rowe
Kightlinger & Gray, LLP
New Albany, Indiana

ATTORNEYS FOR APPELLANT WEOC, INC.

J. Thomas Vetne
Chester Law Office
Elkhart, Indiana

Brian R. Gates
Hunt Suedhoff Kearney, LLP
South Bend, Indiana

James H. Whalen
Lipe Lyons Murphy Nahrstadt & Pontikis Ltd.
Chicago, Illinois

ATTORNEYS FOR APPELLEE

Jon Frederic Schmoll
Steven L. Langer
Sara Anne Langer
Langer & Langer
Valparaiso, Indiana

ATTORNEYS FOR AMICUS CURIAE DEFENSE TRIAL COUNSEL OF INDIANA

William J. Brinkerhoff
Olivia N. Daily
Jeselskis Brinkerhoff and Joseph, LLC
Indianapolis, Indiana

Lucy R. Dollens
Quarles & Brady, LLP
Indianapolis, Indiana

ATTORNEYS FOR AMICI CURIAE RESTAURANT LAW CENTER
AND INDIANA RESTAURANT & LODGING ASSOCIATION
Melissa M. Root
Gabriel K. Gillett
Jenner & Block LLP
Chicago, Illinois

ATTORNEY FOR AMICUS CURIAE THE INDIANA TRIAL
LAWYERS ASSOCIATION
James P. Barth
Pfeifer, Morgan & Stesiak
South Bend, Indiana